CITY OF SAN ANTONIO, Appellant,

v.

Joyce Perez HIGLE, Appellee.

No. 04–82–00228–CV.

Court of Appeals of Texas, San Antonio.

Feb. 29, 1984.

Rehearing Denied Jan. 31, 1985.

Second Rehearing Denied Feb. 25, 1985.

---

**1.** See authorities cited in *26 TEX.JUR.3d, Criminal Law §§ 3919 and 3949* (1983).

Nelson Clare, Asst. City Atty., San Antonio, for appellant.

Dennis P. Bujnoch, Tinsman & Houser, Inc., San Antonio, for appellee.

Before CADENA, C.J., and CANTU and DIAL, JJ.

## OPINION

CADENA, Chief Justice.

Defendant, City of San Antonio, appeals from a judgment, based partially on a jury verdict, awarding defendant, Joyce Perez Higle, $59,000.00 for injuries sustained by her when she was shot in the hand by Detective Tackett, a San Antonio police officer.

The jury attributed 75% of the causative negligence to defendant and 25% to plaintiff, and fixed the total amount of plaintiff's damage at $59,000.00. The trial court, on plaintiff's motion, disregarded the finding concerning plaintiff's negligence and awarded plaintiff the full amount of the damages found by the jury.

On February 28, 1980, Tackett and five other officers attempted to execute a search warrant authorizing the search of apartment 413 at the Habitat Apartments in San Antonio. They were met by gunfire from the occupants of the apartment and one officer was wounded. One police officer went to apartment 411, adjacent to 413, which was occupied by plaintiff. The officer asked plaintiff to call an ambulance and to furnish a chair for the wounded officer. He explained the situation to plaintiff and warned her to stay in the apartment and to stay away from the window. Plaintiff

called her mother and her uncle and they told her to hide in the closet and stay there.

When the officer spoke to plaintiff the gunfire continued. After a short time the gunfire stopped. One of the men in apartment 413 telephoned police headquarters and said that the men in the apartment would surrender as soon as their attorney arrived on the scene. The police dispatcher relayed this information to the officers on the scene and gave them instructions to "contain" the situation.

Some 20 or 30 minutes after the cessation of the gunfire, plaintiff became curious and decided to look out the window to determine if the police were still there. As she approached the window she began to move the curtain so that she could see what was happening. Detective Tackett, who was stationed about 15 feet from the window, saw the movement of the curtain and immediately fired his shotgun, striking plaintiff in the hand. At no time had any shots been fired from plaintiff's apartment, nor is there any evidence indicating that the officers had any reason to fear that a threat to their safety could possibly emanate from plaintiff's apartment.

Defendant urges that the judgment must be reversed because of four instances in which it was suggested to the jury, or stated to the jury, that Lt. Smith, a San Antonio police officer, told plaintiff that she would not have to pay her hospital and medical expenses. These incidents were:

1. During voir dire examination of the prospective jurors, plaintiff's attorney stated that the evidence would show "that a couple of the officers wanted to pay [plaintiff's] medical bills...." The trial judge sustained defendant's objection and instructed the prospective jurors not to consider the remark, but defendant's motion for mistrial was overruled.

2. While Lt. Smith was being examined by appellee, he was asked whether, during one of the lieutenant's visits to the hospital, there was "some mention of the fact that the city would take care of" plaintiff's medical expenses. Defendant's objection was sustained and the jury was properly

instructed, but defendant's motion for mistrial was overruled.

3. Counsel for plaintiff, while still examining Lt. Smith, asked, "What did you say, if anything, to Mrs. Higle about her medical expenses while she was in the hospital?" Defendant objected and, before the court ruled on the objection the question was withdrawn. Defendant again moved unsuccessfully for a mistrial. Lt. Smith did not answer either question concerning payment of plaintiff's medical expenses.

4. Plaintiff was allowed to testify, over defendant's objection, that Lt. Smith told her that she did not have to worry about anything, that "they would take care of" her bills and that if she wanted anything she had only to ask for it.

■ We are not permitted to reverse a judgment because of error committed in the course of the trial unless we are of the opinion that the error complained of amounted to such a denial of the rights of the appellant "as was reasonably calculated to cause and probably did cause the rendition of an improper judgment...." TEX.R.CIV.P. 434. To determine whether an error was reasonably calculated to cause and probably did cause rendition of improper judgment, the reviewing court must consider the entire record. *Gomez Leon v. State*, 426 S.W.2d 562, 565 (Tex. 1968).

■ The statement by plaintiff's counsel to the prospective jurors that the evidence would show that a "couple of" unidentified police officers wanted to pay plaintiff's medical bills was promptly ruled improper by the trial court and the jury was instructed to disregard it. The same is true of the question inquiring of Lt. Smith if there had been some mention of the fact that defendant would pay such bills. The second question to Lt. Smith as to whether he had said anything to plaintiff concerning her medical bills was withdrawn following defendant's objection. Whatever harmful inferences might have been drawn from the instances was of the curable type and was removed by the court's instructions in the

first two instances and by the withdrawal of the question in the third instance. *Liberty Mutual Insurance Company of Texas v. Rawls*, 358 S.W.2d 920, 931 (Tex.Civ. App.—Fort Worth 1962, no writ).

■ We agree that the admission of plaintiff's testimony that Lt. Smith told her that "they" would take care of her medical expenses was error. Evidence concerning such offer is completely irrelevant unless the fact that the offer was made is intended to form the basis for an inference of admission of liability. Without extended discussion, it is sufficient to point out that there is not evidence which even suggests that Lt. Smith was authorized to make such an offer and admission on behalf of the city. Statements or declarations of an agent or employee are admissible against the principal only when they are made within the scope of his authority. There is no evidence of express authority, and the record does not disclose any evidence that Lt. Smith's statement accompanied an authorized act or that it was closely enough connected with his performance of an authorized act to come within the meaning of that nebulous and much abused term, "res gestae." 2 C. McCORMICK & R. RAY, TEXAS LAW OF EVIDENCE § 1164 (1956).

■ Plaintiff's testimony was not admissible on the theory that it was evidence of a prior inconsistent statement offered for the purpose of impeaching Lt. Smith. Lt. Smith never denied making such a statement. In the absence of such a denial, plaintiff's statement concerning the alleged offer does not contradict any portion of Smith's testimony. 1 C. McCORMICK & R. RAY, *op. cit.* § 692.

■ However, in view of the ample evidence of negligence on the part of Detective Tackett, the officer who fired the shotgun blast which injured plaintiff, we cannot say that the admission of plaintiff's testimony constitutes reversible error. The evidence establishes:

1. At the time plaintiff was injured, there had been no gunfire or other threat to the safety of the officers for 20–30 minutes.

2. There is no evidence of any activity originating in plaintiff's apartment which might be considered a threat to the officers. No shots had been fired from such apartment.

3. Tackett fired when he had seen only a movement of the drapes, making no effort to learn the identity of the person at the window.

4. According to San Antonio Police Department policy, the instructions to "contain" the situation meant that the officers were not to fire their weapons unless they were fired at or otherwise attacked or the "suspects" were attempting to escape. The evidence shows that apartment 413, from which the shots at the officers had been fired, was being closely observed by the officers present and that all means of exit from such apartment were being observed. There is no evidence that any person had left apartment 413 or that any person had entered apartment 411, plaintiff's apartment. The movement of the drapes in plaintiff's apartment which prompted Tackett to fire is no evidence of an attack on the officers or of an attempt of any person in 413 to escape. It is clear from the evidence that the officer had no idea of the identity of the person at whom he fired.

■ Such evidence, particularly when viewed with the fact that the jury found that plaintiff had been guilty of 25% causative negligence, makes it clear that defendant has not met its burden of showing that plaintiff's evidence probably resulted in the rendition of an improper verdict.

■ Defendant's claim that it was entitled to an instructed verdict, based on the defense of governmental immunity, is grounded on the provisions of TEX.REV. CIV.STAT.ANN. art. 6252–19, § 14(8), the Texas Tort Claims Act (Vernon 1970 and Vernon Supp.1982–1983), which provides that the waiver of immunity contained in the statute does not apply "to any claim arising out of the action of an officer ...

while responding to an emergency call or reaction to emergency situations when such action is in compliance with the laws and ordinances applicable to emergency action." Defendant does not call our attention to any "laws" or "ordinances" with which Tackett's actions in this case complied. Instead, the evidence shows that Tackett acted in violation of prescribed departmental procedures. Defendant has not brought itself within the provisions of § 14(8).

■■■■ Defendant, contending that the question of the existence or non-existence of an emergency is a matter of law for the court to determine, argues that the trial court erred in submitting the question of emergency to the jury. Where the issue of emergency is raised by the evidence, the issue is one to be decided by the jury under proper instructions. *Abalos v. Oil Development Company of Texas*, 544 S.W.2d 627, 634 (Pope, J., Concurring) (Tex.1976); *Yarborough v. Berner*, 467 S.W.2d 188, 193 (Tex.1971). The evidence already detailed does not establish the existence of an emergency as a matter of law. Therefore, the court did not err in submitting the question of fact to the jury.

■■■ Defendant asserts that it was entitled to an issue on justification under TEX. PENAL CODE ANN. § 9.51 (Vernon 1974). This section justifies the use of force by an officer when he believes the use of such force is immediately necessary to make or assist in the making of an arrest or search, or to prevent or assist in preventing an escape after arrest. In view of the "containment order," it cannot be said that Tackett discharged the firearm in an effort to make or assist in the making of an arrest or search. There is no evidence which furnishes a basis for a finding that Tackett had reason to believe that any person in plaintiff's apartment was attempting to escape or attempting to prevent a search of apartment 413. Further, § 9.05 of the Penal Code provides that even if the use of force is justified, the actor is not entitled to the defense of justification if in using such

force he recklessly injures or kills an innocent third person.

According to § 6.03(c) of the Penal Code, a person acts recklessly with respect to circumstances surrounding his conduct or the result of his conduct "when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." The risk "must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

Prior to the time the court prepared its charge, some discussion took place concerning the charge. Counsel for defendant at that time conceded that no issue should be submitted inquiring whether Tackett was aware that he was firing into plaintiff's apartment because all of the evidence established that he had such knowledge at the time he fired. Defendant also pointed out that no issue should be submitted inquiring whether Tackett knew that plaintiff was in such apartment because the evidence conclusively established his knowledge of that fact. When these concessions are considered with the fact that Tackett had no reason to believe that firing into plaintiff's apartment was necessary in order to execute the search warrant calling for the search of another apartment and no reason to believe that the movement of the drapes in apartment 411 indicated the need for the use of force against the occupant of that apartment in order to prevent the escape of the persons in another apartment, the refusal of a charge on justification was justified.

In any event, the question of justification is clearly in the nature of an affirmative defense, and the burden was on defendant to request its submission in writing in substantially correct wording. The record does not reflect such written request by defendant, and the court's failure to submit an issue on justification cannot be ground for reversal. TEX.R.CIV.P. 279. While the exchange between defendant's counsel

and the court contains reference to submission of an issue which had been tendered, the tendered issue is not in the record.

■ Defendant's complaint that there was no evidence to support an award to plaintiff for loss of earning capacity is without merit. The evidence reflects a serious injury to plaintiff's hand, resulting in permanent impairment and disfigurement. She suffered a 75% physical impairment of the ring finger, 7% permanent impairment of the left hand, an 6% permanent impairment of the upper extremity. She is unable to make a fist of her left hand; has difficulty in lifting objects; and continues experiencing weakness in her fingers. The evidence amply supports an award for loss of earning capacity.

■ The trial court did not err in submission of damage issues for mental pain and anguish separate from damages for disfigurement. *Sax v. Votteler*, 648 S.W.2d 661, 667 (Tex.1983).

■ We agree that the trial court erred in disregarding the jury finding that plaintiff was guilty of 25% causative negligence and awarding her the full amount of damages found by the jury. A trial court may disregard a jury finding only if there is no evidence to support such finding. *Sanders v. Harder*, 148 Tex. 593, 596, 227 S.W.2d 206, 209 (1950); *Escamilla v. Garcia*, 653 S.W.2d 58, 61 (Tex.App.—San Antonio 1983, no writ).

■ The evidence establishes that plaintiff was aware of the situation and the firing. The evidence establishes the existence of a dangerous situation, and plaintiff was told by several persons to stay away from the window. Such testimony clearly constitutes some evidence that plaintiff was aware of the danger and that her disregard of the advice of the police and her relatives constituted negligence.

The judgment of the trial court is reformed to provide that plaintiff, Joyce Perez Higle, recover from defendant, City of San Antonio, the sum of $44,250.00. As so reformed, the judgment is affirmed.

Costs are taxed 80% against defendant, City of San Antonio, and 20% against plaintiff, Joyce Perez Higle.

## ON MOTIONS FOR REHEARING

In this opinion we address only the continued insistence by appellant, City of San Antonio, that the trial court erred in refusing to submit an issue inquiring whether the police officer, Detective Tackett, was justified in using force under section 9.51 of the Penal Code. The portion of the opinion discussing this contention is subject to being interpreted as asserting that City failed to request an issue submitting this affirmative defense. As so interpreted, the opinion does not correctly reflect that which is shown by the record. The intention was to point out that the City had failed to request an issue in substantially correct form. While an issue was requested, it was not in substantially correct form.

The issue requested inquired whether the officer "believed that deadly force was immediately necessary to make or assist in making an arrest or search...". The provisions of section 9.51 authorizing the use of deadly force provide that an officer is justified in using deadly force if he reasonably believes the "deadly force is immediately necessary to make an arrest or to prevent escape after arrest" if the officer reasonably believes that the conduct for which arrest is authorized included the use or attempted use of deadly force, or reasonably believes that there is a substantial risk that the person to be arrested will cause death or serious bodily injury to others if the arrest is delayed.

■ There is no provision in section 9.51 authorizing the use of deadly force in order to assist in the making of a search. Under section 9.51, an officer is permitted to use force to the extent that he believes the use of force is necessary to make an arrest or search. The issue requested by City would leave the jury to believe that the use of deadly force was justified if the officer believed that deadly force was necessary "to make or assist in the making of an arrest or search." Insofar as the re-

quested instruction authorized the jury to find that the use of deadly force was authorized when necessary to make or assist in making a search it was clearly erroneous and was properly refused.

The motions for rehearing are overruled.