Velma **DURHAM, Individually and as Administratrix of the Estate of Annie Durham, Deceased, and Ricky Foster, Individually and as Administrator of The Estate of Tonya Foster, Deceased, Appellants**

v.

**BOWIE COUNTY, Texas, Appellee.**

No. 06–03–00058–CV.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 8, 2004.

Decided April 21, 2004.

Joe B. Young, Patton, Nix & Young, LLP, Longview, for Appellants.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for Appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

On February 16, 2001, promptly after a flood-induced chasm in Bowie County Road 4121 was discovered, warning signs

were placed at the site by County employees. The next day, approximately one hour after the warning signs were removed—without the County's knowledge—by some unknown third party, Annie Durham and Tonya Foster were killed when their car fell into that chasm. Velma Durham and Ricky Foster subsequently sued Bowie County, alleging wrongful death and seeking survivorship damages. Durham and Foster claim the Texas Tort Claims Act waived sovereign immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001, et seq. (Vernon 1997 & Supp.2004). The trial court found no waiver of sovereign immunity and granted Bowie County's motion for summary judgment. Appealing the summary judgment, Durham and Foster contend the trial court (1) failed to recognize the road washout as a special defect under Section 101.022, (2) erred in applying the Section 101.055 emergency exception, and (3) incorrectly applied the notice requirement under Section 101.060. We affirm the summary judgment.

### I. *Review of Summary Judgment Under Texas Tort Claims Act*

On appellate review of a summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). In our determination of whether a material fact issue exists, evidence favorable to the nonmovant will be taken as true, every reasonable inference indulged, and any doubt resolved in favor of the nonmovant. *Id.* at 548–49. Summary judgment for a defendant is appropriate where the defendant disproves at least one essential element of the plaintiff's cause of action or conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). If the movant establishes its right to summary judgment, the burden then shifts to the nonmovant to present any evidence that would otherwise preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979).

Because the common-law doctrine of sovereign immunity protects governmental units from tort liability unless a constitutional or legislative provision expressly states otherwise, this appeal turns on the applicability of the Texas Tort Claims Act. *See Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex.1998). Waiving general immunity from tort liability, TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a), the Act provides that "[a] governmental unit in the state is liable for ... personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law," TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). This appeal requires us to determine whether one of two proffered exceptions to the general waiver of immunity applies as a matter of law, thus barring recovery and making the summary judgment proper.

### II. *Sign Removal Exception*

Durham and Foster's first and third points of error challenge the application of Section 101.060(a)(3) in this case. That provision would maintain sovereign immunity against claims "arising from the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice." TEX. CIV. PRAC. & REM.CODE ANN. § 101.060(a)(3). No immunity exists under this section if the claim arises out of "the duty to warn of special defects such

as excavations or roadway obstructions." TEX. CIV. PRAC. & REM.CODE ANN. § 101.060(c).

Bowie County maintains that the exception applies under the facts of this case because (1) both parties agree the road closure signs placed on County Road 4121 were removed by an unknown third party approximately one hour before the accident occurred, and (2) Durham and Foster failed to produce any evidence the County was actually aware the signs had been removed. The County's reliance on Section 101.060 is misplaced because the washout of County Road 4121 was certainly a special defect as that term is used in Sections 101.060(c) and 101.022(b).

■ "Whether a condition is a premise defect or a special defect is a question of duty involving statutory interpretation and thus an issue of law for the court to decide." *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 (Tex.1992). Statutorily defined as including "excavations or obstructions on highways, roads, or streets," TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(b), special defects have been viewed generally by courts as conditions that present a threat to normal users of a road, *Morse v. State*, 905 S.W.2d 470, 474 (Tex.App.-Beaumont 1995, writ denied). This is true even if the defect is not actually on the road itself or if the defect was created by natural forces, as opposed to an overt action by the governmental unit. *Id.* at 475–76 (citing *Harris County v. Eaton*, 573 S.W.2d 177, 179 (Tex.1978)).

■ For a condition to be a special defect, however, it must not only present a threat to the ordinary user of a roadway, but the danger must also be unexpected and unusual. *State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex.1993). A special defect, as distinguished from a premise defect, is outside the ordinary course of events or longstanding and routine expectation. *Harding v. Kaufman County*, 119 S.W.3d 428, 433 (Tex.App.-Tyler 2003, no pet.). For example, when rain is accompanied by freezing temperatures, it is neither unexpected nor unusual for icy conditions to develop on a bridge. *Id.* (citing *Kitchen*, 867 S.W.2d at 786). Likewise, it is neither unexpected nor unusual that flooding might occur at a low-water crossing during a thunderstorm. *Id.* (citing *Corbin v. City of Keller*, 1 S.W.3d 743, 747 (Tex.App.-Fort Worth 1999, pet. denied)).

■ The summary judgment evidence in this case conclusively establishes that the February 17, 2001, washout of County Road 4121 was a special defect within the meaning of the Act. *See State v. Nichols*, 609 S.W.2d 571, 573 (Tex.Civ.App.-Waco 1980, writ ref'd n.r.e.) (ruling three-to four-foot caved-in portion of highway was special defect). Bowie County employees described the dangerous condition in question as a hole extending almost entirely across the width of the roadway, approximately five to seven feet deep and impossible for a vehicle to travel safely over or around. *See Morse*, 905 S.W.2d at 475 (to determine whether condition is special defect, consider size of condition). Unlike the expectation of potholes and ruts on an unpaved rural road, the gaping, impassable hole left after the collapse of the culvert underlying County Road 4121 was outside the ordinary course of events or longstanding and routine expectation. We hold, therefore, that the washout of County Road 4121 was a special defect under Section 101.022(b), making the sign removal exception of Section 101.060(a)(3) inapplicable.

### III. *Emergency Exception*

In response to Durham and Foster's second point of error, Bowie County main-

tains that sovereign immunity was preserved in light of the Act's emergency exception. That exception provides that immunity is not waived for claims arising

> from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2). If the exception applies, its language completely removes from the statutory waiver of sovereign immunity any claims arising from Bowie County's emergency actions or reactions, and, unlike our earlier discussion of the exception laid out in Section 101.060(a)(3), this is true regardless of the offending defect's classification. *City of Arlington v. Whitaker*, 977 S.W.2d 742, 745 (Tex.App.-Fort Worth 1998, pet. denied).

 To establish this affirmative defense for purposes of summary judgment, Bowie County must prove, as a matter of law, all of the essential elements of the defense, leaving no issues of material fact. *See Sci. Spectrum, Inc.*, 941 S.W.2d at 911. That is, Bowie County must prove it was reacting to an emergency situation and either acted in compliance with any laws applicable to its emergency action or, in the absence of such laws, did not act with conscious indifference to, or reckless disre-

gard for, the safety of others.[1] "The question on appeal is not whether the summary judgment proof raises a fact issue, but whether the summary judgment proof establishes as a matter of law that there is no fact issue." *Borrego v. City of El Paso*, 964 S.W.2d 954, 958 (Tex.App.-El Paso 1998, pet. denied) (citing *Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970); *Mejia v. City of San Antonio*, 759 S.W.2d 198, 200 (Tex.App.-San Antonio 1988, no writ)). Our review of the record indicates Bowie County met this burden and was, therefore, entitled to summary judgment. We examine those elements of proof in order, considering (1) whether Bowie County was reacting to an emergency situation and (2) whether it acted in compliance with laws applicable to emergency action.

### A. Emergency Response

The proof conclusively establishes that Bowie County's placing of the signs at the scene of the washout was a reaction to an emergency situation. Both parties provided summary judgment evidence of the severity of the storms and flooding leading to the washout of a portion of County Road 4121. They also agreed that county employees responded to this potentially deadly hazard on February 16 by placing road closure signs leading up to the washed-out area of the road and that those signs remained in place until approximately one hour before the accident on February 17, when they were removed by an unknown third party.[2]

---

1. Durham and Foster do not assert Bowie County acted with conscious indifference to, or reckless disregard of, safety in responding to the washout, so we need not address that portion of the statute.

2. Apparently focusing on the timing of the accident instead of when County employees actually closed County Road 4121 to traffic, the parties disagree as to the duration of the

emergency itself. On one hand, Bowie County contends that its employees were still reacting to the emergency situation created by the weather; on the other hand, Durham and Foster argue that the County's reaction to the emergency situation ended with the storms and the placement of the road closure signs— twenty-four hours before the accident occurred.

If raised by the evidence at trial, it would normally be for the jury to decide whether the elements of Section 101.055(2)—such as the existence of an emergency and the government's compliance with applicable laws and ordinances—were satisfied. *Borrego*, 964 S.W.2d at 958 (citing *Mejia*, 759 S.W.2d at 200). In this case, however, the first requirement of the statute is satisfied in that the evidence conclusively demonstrates Bowie County was reacting to an emergency situation at the time its employees placed the road closure signs February 16.

Noting that the emergency exception does not apply solely to traffic accidents involving emergency vehicles, *Whitaker,*

977 S.W.2d at 745, we conclude that, under the summary judgment evidence, the effects of the weather conditions faced by Bowie County were so serious and widespread that, under the circumstances, Bowie County conclusively proved it was reacting to an emergency situation when its employees placed the road closure signs.[3]

B. *Compliance with Laws Applicable to Emergency Action*

Durham and Foster, contending the provisions of the Texas Manual on Uniform Traffic Control Devices for Streets and Highways, 1980 edition, as amended by Revision Number 7 ("Manual"), required Bowie County to place road closure signs

---

The parties' disagreement regarding the duration of the emergency focuses on the definition of the term as used in Section 101.055(2). TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2) (Vernon 1997). Rather than accept Durham and Foster's position that an emergency situation is one in which there is (1) a sudden and unexpected condition, (2) requiring immediate action, and (3) without time for deliberation, *see Del Bosque v. Heitmann Bering–Cortes Co.,* 474 S.W.2d 450, 452 (Tex.1971) (discussing sudden emergency doctrine); STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC 3.3 (2002), Bowie County insists the definition is not so restrictive and does not necessarily require immediate action. Instead, Bowie County urges this Court to adopt a more expansive definition of emergency—one encompassing "an urgent need for assistance or relief." By doing so, application of the Act's emergency exception would be extended for weeks or even months to protect governmental units reacting to conditions left in the wake of such events as floods or hurricanes.

Regardless of whether an emergency is limited to "a sudden, urgent, usually unexpected occurrence or occasion requiring immediate action" or expanded to include "a state . . . of need for help or relief, created by some unexpected event," THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 636 (2d ed.1987), it is irrelevant whether an emergency existed at the time of the accident because Durham and Foster's cause of action arises from the claim that Bowie County was negligent in its re-

sponse to the threat initially posed by the washout. In other words, we consider only whether Bowie County was responding to an emergency situation on February 16 when it placed the signs, as opposed to whether an emergency situation still existed at the time of the accident on February 17.

3. The summary judgment evidence indicates the flooding leading to the washout of County Road 4121 resulted from devastating ice, snow, and rain storms occurring between late December 2000 and mid-February 2001. Substantial amounts of rain continued to fall on already-saturated ground, and the resulting localized flooding and surface runoff led the National Weather Service to warn repeatedly of flash flooding in many areas of northeast Texas, including Bowie County.

Not only was County Road 4121 adversely affected by the weather February 15 and 16, but hazardous conditions existed on County Roads 4206, 4214, 4215, 4224, 4240, 4247, and 4248, as well as on Highways 8, 991, 1202, 1207, 1208, 1215, and 1234. With heavy rains and flash-flood warnings continuing through February 16, Bowie County's same-day response to the hazard discovered on County Road 4121, in addition to considering its responses to the hazardous conditions on other roadways, falls easily within the statute's requirement that a government employee must be "reacting to an emergency situation" in order for the exception to apply. TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2).

according to specified criteria, argue that the County failed to comply with the Manual and, therefore, could not have satisfied the second element of the emergency exception. *See* 24 Tex. Reg. 169 (1999) (codified at 43 TEX. ADMIN. CODE § 25.1) (in effect at time of accident).[4] Focusing on the portions of the Manual which Durham and Foster assert are, within the meaning of Section 101.055(2), "laws" or "ordinances" "applicable to emergency action" with which Bowie County did not comply, we hold they are "laws" or "ordinances" but are not "applicable to emergency action."

### 1. *"Laws" or "Ordinances"*

Citing *Guillen v. City of San Antonio*, 13 S.W.3d 428, 433 (Tex.App.-San Antonio 2000, pet. denied), Bowie County asserts the Manual does not apply because provisions of the Texas Administrative Code are not included in the "laws and ordinances" referred to in the emergency exception. Bowie County also cites *City of El Paso v. Hernandez*, 16 S.W.3d 409, 416 (Tex.App.-El Paso 2000, pet. denied) (citing *Fernandez v. City of El Paso*, 876 S.W.2d 370, 376 (Tex.App.-El Paso 1993, writ denied)), as authority for its argument that Durham and Foster failed to carry their burden of alleging and proving the action forming the basis of their complaint violates a statute or ordinance.

We do not believe *Guillen* and *Hernandez* support these positions. *Guillen*, for example, mentions Section 101.055(2) but does not address it. While *Guillen* stands for the proposition that Section 101.062's reference to a *"statute* or ordinance" does not include a rule under the Texas Administrative Code, it distinguishes *City of San*

*Antonio v. Higle*, 685 S.W.2d 682 (Tex. App.-San Antonio 1984, writ ref'd n.r.e.), on the basis that *Higle* dealt with the predecessor to Section 101.055(2), TEX.REV. CIV. STAT. ANN. art. 6252-19, § 14(8), which, like Section 101.055(2), uses the words *"laws* and ordinances." *Guillen*, 13 S.W.3d at 433 (emphases added). *Higle* (1) found that departmental procedures of the San Antonio Police Department were "laws" or "ordinances," (2) put the burden of proof of compliance on the defending governmental entity, and (3) affirmed a judgment against the city. *Higle*, 685 S.W.2d at 687. *Guillen* not only recognized the significance of the different statutory language—"statute or ordinance" is more restrictive than "laws and ordinances"—but also recognized the two sections' language warranted opposite burdens of proof. *Guillen*, 13 S.W.3d at 433. We agree. Once a sign is installed, the Manual qualifies as having the force of law within the meaning of Section 101.055(2).

### 2. *"Applicable to Emergency Action"*

The final, and critical, inquiry is whether the relevant Manual excerpts apply to "emergency action" within the meaning of Section 101.055(2). In part because the Manual in effect at the time of the accident is not readily available to this Court, we requested and received supplemental briefing from the parties regarding the Manual. In requesting supplemental briefing, we asked Durham and Foster to provide us with copied or imaged portions of the Manual (1) which they assert were, within the meaning of Section 101.055(2), "applicable to emergency action," and (2) with which, they assert, the County failed to comply.

---

4. Section 25.1(a) adopted
 The Texas Manual on Uniform Traffic Control Devices for Streets and Highways, 1980 edition, as amended by Revision Number 7, ... to govern standards and specifications for all such traffic control devices to be erected and maintained upon all highways within this state, including those under local jurisdiction.

In response, Durham and Foster provided us with six photocopied pages from the Manual, pages 6B–1, 6F–8, 6F–41, 6H–13, 6H–52, and 6H–53, all from the Manual's "Part 6," titled "Temporary Traffic Control." Page 6B–1, the first page of Chapter 6B, titled "Fundamental Principles," importantly provides, "All traffic control devices used on street and highway construction, maintenance, utility, or *incident management* (temporary traffic control) operations shall conform to the applicable specifications of this manual." (Emphasis added.) What is meant by "incident management" is not defined in the excerpts provided. Understandably, the parties differ over whether "incident management" as used in the Manual includes "emergency action" as used in Section 101.055(2).

From Chapter 6F, "Temporary Traffic Control Zone Devices," Durham and Foster provided us pages 6F–8 and 6F–41. Neither page provides more light on whether the pages excerpted from the Manual are applicable to emergency action. The same is true of the other three pages provided, from Chapter 6H, "Application of Devices," pages 6H–13, 6H–52, and 6H–53.

The County asserts that, since "incident management" is used on page 6B–1 in the same list as "construction," "maintenance," and "utility," the word "incident" should also be understood to include an element of planning, thus excluding emergency situations from the meaning of "incident" as used by the Manual. While that logic may not be compelling standing alone, we note that the six pages provided us do not expressly, or by necessary implication, apply the provisions to emergency action. While "incident" does not necessarily exclude emergencies, the authors of the Manual could have chosen to use the word "emergency" and make it clear they intended to include it. They did not do so, at least in the Manual excerpts provided to this Court.

If the pages we have been given apply to the emergency response by the County, they would require the County to erect, in an emergency situation, a minimum of twelve freestanding signs (including "Road Closed Ahead," "Detour Ahead," and "Detour"), as well as from two to six Type III barricades with signs affixed (including "Road Closed" and "Detour," and possibly "Road Closed to Thru Traffic"). *See* page 6H–53. This amount of required, systematic detail seems to contemplate a situation amenable to the formulation of a plan, rather than an immediate response to an emergency situation such as the one which faced the County in this case.

The context of Section 101.055(2) is also important to remember. It provides that immunity is not waived for claims arising "from the *action* of an employee while . . . reacting to an emergency situation if the *action* is in compliance with the laws and ordinances applicable to emergency *action*." TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2) (emphases added). We believe that language was used to allow the Legislature room to regulate specific emergency responses by governmental entities, such as driving an emergency vehicle in traffic or responding to an emergency law enforcement situation. In other words, if a law or ordinance specifies how any particular emergency response is to be made, the law or ordinance must be complied with. We do not believe Section 101.055(2) was intended to refer to a general law, such as the Manual, that might touch on emergency situations.

For that reason, we hold that the portions of the Manual urged by Durham and Foster are not "applicable to emergency action" within the meaning of Section 101.055(2).

*IV. Conclusion*

Having determined the unsafe condition of County Road 4121 constituted a special defect within the meaning of Section 101.022(b) of the Texas Tort Claims Act, we therefore hold that, by application of Section 101.060(c), sovereign immunity was not preserved under the sign removal exception set out in Section 101.060(a)(3). We hold that, as a matter of law, Durham and Foster's claims arose from the action of Bowie County employees reacting to an emergency situation and that, while the Manual is a "law" or "ordinance," the asserted portions of the Manual were not "applicable to emergency action" within the meaning of Section 101.055(2).

Summary judgment in favor of Bowie County was, therefore, proper. Accordingly, we affirm the judgment of the trial court.