In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00039-CV**
_____

**AMANDA LAFFERTY, Appellant**

**V.**

**JASPER COUNTY SHERIFF'S DEPARTMENT, Appellee**

On Appeal from the 1st District Court
Jasper County, Texas
Trial Cause No. 31119

**MEMORANDUM OPINION**

In three issues, appellant Amanda Lafferty challenges the trial court's order granting a no-evidence summary judgment in favor of appellee Jasper County Sheriff's Department ("Jasper County"). We affirm the trial court's judgment.

BACKGROUND

Lafferty filed a negligence action against Jasper County for personal injuries, which Lafferty contends she sustained when a vehicle operated by an employee of Jasper County struck a four-wheeler on which she was a passenger, causing Lafferty to be thrown from the four-wheeler. Jasper County filed a no-evidence motion for summary

1

judgment, in which it asserted that because Lafferty had no evidence that it violated any state laws or local emergency response laws while reacting to an emergency situation, Jasper County's governmental immunity from suit was not waived by the Texas Tort Claims Act. In its motion, Jasper County alleged that Deputy Louis Berry heard and then observed a four-wheeler without headlights or a license plate "being driven north on CR 725[,]" so Deputy Berry activated his emergency lights to initiate a traffic stop. According to Jasper County, the driver of the four-wheeler did not pull over and stop, so Deputy Berry activated the siren on his patrol car. Jasper County asserted that the driver still did not stop, but began driving faster. Jasper County alleged that Deputy Berry then "reported an emergency situation, 'in pursuit', of the fleeing four-wheeler to dispatch and continued to operate his patrol car in emergency mode, with lights and siren activated, to warn the public of the danger created by the driver of the unlit four-wheeler."

According to Jasper County's motion, the subsequent pursuit covered approximately seven miles and involved both paved and unpaved roads and publicly-traveled County Roads. Jasper County alleged that the driver of the four-wheeler ran a stop sign and crossed Highway 96, turned around multiple times to look at Deputy Berry's patrol unit; endangered himself, Lafferty, "and the general public by continuing to drive faster and recklessly away from the patrol unit[;]" threw beer cans and a cooler from the four-wheeler; drove through a ditch to evade a road block created by another patrol unit; drove the four-wheeler side to side on dirt roads, causing thick dust and low

2

visibility; and made multiple last-minute turns. Jasper County also alleged that "[t]he pursuit ended when the driver of the four-wheeler braked suddenly causing the four-wheeler to come to an abrupt stop, flip forward and eject Lafferty, then land upside down on the driver."

Jasper County attached Deputy Berry's probable cause affidavit as an exhibit to its no-evidence motion for summary judgment. Deputy Berry's affidavit states that at approximately 11:45 p.m., he heard and then saw a four-wheeler traveling on CR 725, and he observed that the four-wheeler's headlights were not on. Deputy Berry observed that two people were on the four-wheeler, and he turned on his patrol car's overhead lights, followed by the siren, in an attempt to stop the four-wheeler. The driver accelerated, turned to look back at Deputy Berry's patrol car, and continued driving. According to Deputy Berry, as the four-wheeler approached Highway 96, the driver again turned to look at the patrol car. As the four-wheeler approached CR 640, the driver threw containers and beer cans. Deputy Berry averred that as the four-wheeler approached the end of CR 640, Deputy Berry "noticed that Deputy Mike Smith had stop[p]ed his patrol unit at the intersection to try to get the four[-]wheeler driver to stop[,]" and Deputy Smith had gotten out of his vehicle to try to stop the four-wheeler. According to Deputy Berry, the four-wheeler drove through the ditch and evaded Deputy Smith and then turned onto CR 639 and continued to drive faster.

3

In his affidavit, Deputy Smith averred that the driver of the four-wheeler continued driving at a high rate of speed until the driver reached CR 646, when the driver hit his brakes very quickly and turned onto CR 646. The driver "continued to look back" at Deputy Smith's patrol car but refused to stop. According to Deputy Smith, as the driver continued down CR 646, the driver came to a sharp curve that "becomes very dusty[,]" and it became difficult to see the four-wheeler because its lights were still off. The driver continued to throw beer cans and also threw a plastic container, and he then braked "very hard[,]" turned onto a dirt road, and began to sway the four-wheeler back and forth, "causing very thick dust and low visibility." Deputy Smith averred that he had to slow his patrol unit down to maintain his own safety, as well as that of the driver's passenger. The driver continued to drive at a high rate of speed, but Deputy Smith eventually caught up with him when the four-wheeler turned onto a paved road. According to Deputy Smith, the driver continued to look back at the patrol unit and throw beer cans, and the driver still refused to stop.

Deputy Smith continued pursuing the four-wheeler as it again turned onto a dirt road and visibility decreased, but the driver continued to evade the patrol units and look back at them. The driver approached another street, hit his brakes, turned, continued driving at a high rate of speed, and again hit his brakes "very hard" and then turned. The driver continued down the road, again looking back at the patrol units behind him. Deputy Smith averred that after the driver looked side to side, the driver again hit the

4

brakes, and the four-wheeler then left the ground and flipped forward, throwing the passenger over the top of the driver, and the four-wheeler ultimately landed on both the driver and the passenger.

Jasper County attached excerpts from the deposition of the driver of the four-wheeler, Tommy Shivers. In the deposition, Shivers admitted that he tested at double the legal limit when his blood alcohol level was checked at the hospital following the accident. Shivers testified that he did not stop for the sheriff's deputy because he had previous convictions for driving while intoxicated, so he knew that he could go to jail. Shivers admitted that he saw the flashing lights and heard the sirens on the police vehicles and he was driving in the dark without headlights, and he explained that he did not have his headlights on because he thought the police "wouldn't see me or get behind me or follow me." In addition, Shivers admitted that he tried to evade the police, and that although Lafferty was screaming for him to stop the four-wheeler, he did not stop because he feared he would be arrested. Shivers also admitted that he threw beer cans, drove through a ditch to evade a patrol car that had blocked the road, and deliberately caused the four-wheeler to weave from side to side on a dirt road in an attempt to reduce visibility.

Jasper County also attached excerpts from Lafferty's deposition. Lafferty testified that Shivers did not have the four-wheeler's headlights turned on because he had seen a police car. Lafferty testified that she was aware Shivers had prior convictions for driving

5

while intoxicated, and that Shivers evaded the authorities because he was afraid of getting arrested. Lafferty explained that a policeman tried to grab her to remove her from the four-wheeler when the road block was set up, but she was too heavy. When asked whether she tried to persuade Shivers to pull over, she responded, "[f]rom the top of my lungs the entire time." Lafferty explained that she was "[s]creaming frantically" and was "dying to get off" the four-wheeler. Attached to Lafferty's response to Jasper County's motion for summary judgment were additional excerpts from her deposition testimony. In those excerpts, Lafferty testified that as the policemen were pursuing Shivers, the deputies "were coming up on the side of the four-wheeler and bumping it" by hitting the tires. According to Lafferty, the police car bumped the four-wheeler twice. Lafferty testified that the policeman stopped the four-wheeler "when he hit the four-wheeler" with "that black thing" on the front of the vehicle, and she was then thrown from the four-wheeler. In her second amended petition, which was filed four days before the trial court signed the summary judgment order, Lafferty alleged that Jasper County was not immune from suit because Jasper County acted "with conscious indifference to or with reckless disregard for the rights and safety of others, including . . . Lafferty."

ANALYSIS

Jasper County's Jurisdictional Challenge

In its brief, Jasper County contends Lafferty did not timely file her notice of appeal, and that this Court therefore lacks jurisdiction of her appeal. Because this issue, if

6

sustained, would be dispositive, we address it before proceeding to Lafferty's issues. The trial court signed its order granting Jasper County's motion for no-evidence summary judgment on October 19, 2012. On November 16, 2012, Lafferty timely filed a motion for new trial. *See* Tex. R. Civ. P. 329b(a) (A motion for new trial must be filed within thirty days after the judgment complained of is signed.). Lafferty's timely filing of a motion for new trial gave her ninety days from the date of the summary judgment order to file a notice of appeal, which in this case was January 17, 2013. *See* Tex. R. App. P. 26.1(a)(1) (The timely filing of a motion for new trial extends the appellate timetable to ninety days after the judgment is signed.).

In response to correspondence from this Court questioning whether her notice of appeal was timely filed, Lafferty provided proof to the Court via the affidavit of her attorney's legal assistant. The legal assistant's affidavit states that she placed Lafferty's notice of appeal in the U.S. mail, first class, on January 17, 2013, addressed to the Jasper County District Clerk. Lafferty also provided her attorney's file copy of the cover letter for the notice of appeal, dated January 17, 2013, which the Jasper County District Clerk file-stamped on January 22, 2013.

Rule 9.2 of the Texas Rules of Appellate Procedure provides that a document received within ten days after the filing deadline is considered timely filed if it was sent to the proper clerk by U.S. Postal Service by first-class mail, was placed in a properly addressed and stamped envelope or wrapper, and it was deposited in the mail on or before

the last day for filing. Tex. R. App. P. 9.2(b)(1). Rule 9.2(b)(2) provides that the appellate court will accept as conclusive proof of the date of mailing a legible U.S. Postal Service postmark, a receipt for registered or certified mail, or a certificate of mailing by the U.S. Postal Service, but that the appellate court "may consider other proof[.]" Tex. R. App. P. 9.2(b)(2). We accept Lafferty's documentation as proof that her notice of appeal was filed in a timely manner as provided by Rule 9.2(b). Accordingly, we overrule Jasper County's jurisdictional issue.

The No-Evidence Motion for Summary Judgment

A party may move for a no-evidence summary judgment on the ground that there is no evidence of one or more of the essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i). The trial court may grant a no-evidence motion for summary judgment unless the nonmovant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the elements challenged by the motion. *See id.*; *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ridgway*, 135 S.W.3d at 601.

A governmental unit is immune from suit and liability unless the State consents. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

8

Governmental immunity from suit defeats a court's subject-matter jurisdiction. *Id*. We review *de novo* the legal question of whether a trial court has subject-matter jurisdiction. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Whitley*, 104 S.W.3d at 542. The Tort Claims Act waives governmental immunity for damages and injuries caused by the wrongful act or omission or negligence of an employee operating or using a motor vehicle in the scope of his employment. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A) (West 2011). However, the Tort Claims Act does not waive governmental immunity for a claim arising

> from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others[.]

*Id*. § 101.055(2) (West 2011). "The action of an emergency-vehicle operator constitutes a reckless disregard for the safety of others when the operator knows or should have known that the action in question posed a high risk of serious injury to others." *City of San Angelo Fire Dept. v. Hudson*, 179 S.W.3d 695, 700 (Tex. App.—Austin 2005, no pet.) (citing *Smith v. Janda*, 126 S.W.3d 543, 545 (Tex. App.—San Antonio 2003, no pet.)).

9

Governmental immunity under section 101.055(2) would bar Lafferty's suit if the deputy was reacting to an emergency situation and acted in compliance with the laws applicable to the emergency situation or, in the absence of such laws, did not act recklessly or with conscious disregard for the safety of others. *Durham v. Bowie County*, 135 S.W.3d 294, 298 (Tex. App.—Texarkana 2004, pet. denied); *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). The Transportation Code provides that in operating an emergency vehicle while pursuing an actual or suspected violator of the law, the operator may exceed the maximum speed limit as long as doing so does not endanger life or property, and the operator may disregard a regulation governing direction of movement or turning in specified directions. Tex. Transp. Code Ann. § 546.001(2), (4) (West 2011), § 546.002(b)(2) (West Supp. 2013). Chapter 546 of the Transportation Code does not relieve the operator of an emergency vehicle from the duty to operate the vehicle with appropriate regard for the safety of all persons or the consequences of reckless disregard for the safety of others. *Id*. § 546.005 (West 2011). The parties did not provide copies of any allegedly governing law, nor did they plead that any municipal regulations or other traffic laws governed Deputy Smith's operation of the vehicle, and the Transportation Code provisions cited above do not address "bumping" the tires of a fleeing vehicle with an emergency vehicle.

10

The testimony presented by both parties establishes that the deputy was responding to an emergency situation, *i.e.*, a four-wheeler traveling on publicly-traveled roads in the dark without a headlight, carrying a passenger who was screaming to be allowed to get off the vehicle, and being driven by Shivers, who was trying to evade the authorities by driving with the headlights off, driving at a high rate of speed, throwing objects from the four-wheeler, swaying from side to side on a dirt road to create dust and reduce visibility, and driving through a ditch to evade a road block. *See id*. § 101.055(2). The only dispute in the summary judgment evidence appears to be whether Deputy Smith "bumped" the four-wheeler with his patrol car.

Having determined that Deputy Smith was responding to an emergency situation, we must now consider whether Lafferty provided more than a scintilla of evidence that Deputy Smith acted recklessly or with conscious disregard for her safety or the safety of others. *See id*.; *Durham*, 135 S.W.3d at 298. Viewing the testimony in the light most favorable to the non-movant, Lafferty, we conclude that even accepting as true Lafferty's deposition testimony that Deputy Smith bumped the wheels of the four-wheeler twice, Lafferty failed to produce more than a scintilla of evidence that Deputy Smith acted recklessly or with conscious disregard for the safety of Lafferty or others. *See Hudson*, 179 S.W.3d at 700.

11

Therefore, the trial court did not err by concluding that governmental immunity barred Lafferty's claims and granting summary judgment in favor of Jasper County. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(1)(A), 101.055(2); *Whitley*, 104 S.W.3d at 542. Accordingly, we overrule Lafferty's issues and affirm the trial court's order granting no-evidence summary judgment in favor of Jasper County.

     AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on October 31, 2013
Opinion Delivered November 21, 2013

Before McKeithen, C.J., Kreger and Horton, JJ.