

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00325-CV

_____

CITY OF ARLINGTON, Appellant

V.

CRAIG TAYLOR, Appellee

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-329704-21

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellee Craig Taylor sued Appellant City of Arlington (City) after Taylor was involved in a car accident with a City police officer who was responding to an emergency. The City appeals the trial court's denial of its plea to the jurisdiction, contending that it was entitled to immunity under the emergency exception to the Texas Tort Claims Act's (TTCA) waiver of municipal immunity. We will affirm.

## I. BACKGROUND

### A. FACTUAL BACKGROUND[1]

Benajah Baskin, a City police officer, responded to an emergency call to assist another officer with an occupied stolen vehicle. Baskin testified that "[b]ased on [his] training and experience, a police officer alone with an occupied stolen vehicle is a dangerous situation" and "[t]he police officer could be in danger if he or she initiates an arrest and the person in the vehicle resists arrest." Baskin testified that he turned on his emergency lights and sirens and began driving to the location of the stolen vehicle. His lights and sirens remained on throughout the incident.

Traveling north on Lincoln Drive, Baskin approached the intersection with Green Oaks Boulevard. Taylor was traveling east on Green Oaks Boulevard in his vehicle. Taylor testified that he was traveling at or just below the speed limit and did

---

[1]All facts are derived from the parties' plea-to-the-jurisdiction evidence.

not see Baskin's vehicle. At the intersection, Baskin had a red light and Taylor had a green light.

Baskin testified that he slowed down and scanned the intersection to confirm that it was clear before proceeding. According to Baskin, other vehicles at the intersection were stopping or had already stopped, and he also came to a "momentary stop" before proceeding into the intersection. Almost immediately after entering the intersection, Baskin's vehicle was struck by Taylor's. Baskin testified that he did not see Taylor's vehicle until it was too late.

Taylor testified that, as he approached the intersection, he did not see Baskin's vehicle or emergency lights and did not hear any sirens. There are three traffic lanes on that stretch of Green Oaks Boulevard, and Taylor said that he was traveling in the lane farthest from Baskin and that a truck was driving next to him in the middle lane. Taylor surmised that this truck—which stopped before the intersection—may have obstructed him from seeing Baskin's vehicle. Taylor said that he applied his brakes immediately before the collision.

Gregg Dragun, who witnessed the accident, testified that he was stopped at the intersection heading in the same direction as Baskin on Lincoln Drive. Dragun recalled that conditions were clear and that, although he could see the entire intersection without obstruction, he never saw Taylor's vehicle until the collision occurred. As Dragun waited at the red light, Baskin came up from behind him, "came to a complete stop, and then . . . ventured forward" into the intersection. He

3

confirmed that other vehicles heading in the same direction as Taylor on Green Oaks Boulevard had stopped even though they had a green light. In Dragun's estimation, Taylor "should have stopped" given that other vehicles traveling eastbound on Green Oaks had stopped and because Taylor should have seen Baskin's lights or heard his sirens.

Officer Jessica Ramirez, who investigated the accident, testified that Baskin had not come to a complete stop before entering the intersection. She also noted in her crash report that "[Baskin] may have operated the vehicle without due care." When deposed about what she meant by this, Ramirez agreed that she had concluded that Baskin may have acted without due care because "he [ha]dn't check[ed] to make sure all three lanes were clear before he entered" the intersection. This issue was expounded upon further in her deposition:

Q. Okay. And if you don't see any traffic in Lane No. 3, the inside lane that Mr. Taylor was in because there's vehicles in Lane 2 that could be blocking your view, that creates a blind spot. [I]n that situation should [Baskin] have waited another second or two to make sure that traffic was clear before he just entered into it blindly?

A. He could have.

Q. And if he would have, he would have noticed another vehicle coming across and he would have waited for it to pass, right?

. . .

A. Possibly.

Q. . . . Possibly. And then possibly this accident - - this accident could have been avoided had he done so, correct?

4

. . .

A. Possibly.

Sergeant John Brown attested that the Arlington Police Department Crash Review Board (Board) investigated the crash and determined that it was a "non-chargeable offense."[2] Brown opined that Baskin had "acted consistently with the rules and regulations applicable to responding to an emergency call." He also testified that dashcam video showed that Baskin slowed down but did not completely stop at the intersection.[3]

## B. PROCEDURAL BACKGROUND

Taylor sued the City for negligence, and the City filed a plea to the jurisdiction. In its plea, the City argued that it had immunity under the emergency exception to the TTCA's waiver of immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). In response, Taylor argued that Baskin had driven recklessly and that all of the City's plea witnesses were interested witnesses because they were employed by the City. Taylor contended that, as interested witnesses, their testimony was incapable of supporting

---

[2]Brown, who serves as chair of the Board, explained that the Board investigates all crashes involving Arlington police vehicles. According to Brown, when the Board determines that a crash is a non-chargeable offense, the case is referred back to the police officer's "chain-of-command for further review and determination of whether any discipline not directly related to the crash is warranted."

[3]A dashcam video from Baskin's vehicle shows that he had reduced his speed when he entered the intersection but never came to a complete stop. Ramirez noted in her crash report that the video recorded Baskin's speed at nine miles per hour at the time he slowed down.

5

the City's plea because it raised fact issues concerning whether Baskin had (1) come to a complete stop and (2) confirmed that all lanes of traffic were clear before proceeding into the intersection. The trial court denied the plea to the jurisdiction and the City filed this interlocutory appeal.

## II. STANDARD OF REVIEW

The question of governmental immunity is jurisdictional, and we review a plea to the jurisdiction de novo. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). "The party suing the governmental unit bears the burden of affirmatively showing waiver of immunity." *Id.* "To determine whether the party has met this burden, we may consider the facts alleged by the plaintiff and the evidence submitted by the parties." *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019). When, as here, jurisdictional facts are challenged, our review mirrors that of a traditional summary judgment motion, and the burden is on the government to meet the summary-judgment standard of proof. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 408 (Tex. App.—Fort Worth 2006, pet. denied).

Thus, in evaluating the plea-to-the-jurisdiction evidence, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in their favor. *Miranda*, 133 S.W.3d at 228. If the pleadings and evidence create a fact question as to jurisdiction, dismissal is improper. *Maspero*,

6

640 S.W.3d at 529.  "However, if the evidence is undisputed or fails to raise a fact question, the plea must be granted."  *Id.* (internal quotations omitted).

## III.  DISCUSSION

In a single issue, the City argues that its plea to the jurisdiction should have been granted because the emergency exception to the TTCA's immunity waiver applied to bar Taylor's claim.  We hold that the City did not bear its initial summary-judgment burden of conclusively proving its entitlement to that exception.

### A.  THE EMERGENCY EXCEPTION

Governments are immune from suit unless waived by state law.  *Id.* at 528.  The TTCA waives immunity for the negligent acts of government employees in specific situations.  *Id.*  But there are a number of exceptions, including one for emergency situations, which provides that the TTCA waiver provisions do not apply to claims

> arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others[.]

Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2).

To properly assert its entitlement to this exception in a summary-judgment context, the government bears the initial burden of conclusively proving as a matter of law that its employee (1) was responding to an emergency call and (2) acted in

7

compliance with the laws applicable to the emergency situation or, if none apply, acted without conscious indifference or reckless disregard. *Id.*; *see Durham v. Bowie County*, 135 S.W.3d 294, 298 (Tex. App.—Texarkana 2004, pet. denied) ("To establish this [emergency exception] affirmative defense for purposes of summary judgment, Bowie County must prove, as a matter of law, all of the essential elements of the defense, leaving no issues of material fact."). It is only after the government makes this initial showing that the burden shifts to the plaintiff to plead and prove that the emergency exception does not apply. *City of San Antonio v. Smith*, 562 S.W.3d 75, 83 (Tex. App.—San Antonio 2018, pet. denied) (citing *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006)).

## B. THE CITY DID NOT BEAR ITS INITIAL BURDEN

For the emergency exception to apply here, the City bore the initial summary-judgment burden of conclusively proving that Baskin (1) was responding to an emergency call or reacting to an emergency situation and (2) complied with the laws applicable to emergency action, if any such laws existed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). The City asserts, and we agree, that the law applicable to the emergency action taken by Baskin is found in Section 546.001 of the Texas Transportation Code. *See* Tex. Transp. Code Ann. § 546.001(2). This Section provides that the operator of an emergency vehicle responding to an emergency call may "proceed past a red or stop signal or stop sign, *after slowing as necessary for safe operation.*" *Id.* §§ 546.001(2) (emphasis added), 546.002.

8

Assuming without deciding that Baskin was responding to an emergency call, we must determine whether the City conclusively proved that he proceeded into the intersection and past the red light after slowing as necessary for safe operation.

It is undisputed that Taylor was traveling in the third and farthest lane from Baskin's perspective as Baskin approached the intersection and that at least one vehicle had stopped in the middle lane next to Taylor, which obstructed Baskin's view of the traffic traveling in Taylor's lane. Though Baskin testified that he came to a complete stop and scanned the intersection to ensure that it was clear before proceeding, other evidence conflicted with his account:

• Baskin's dashcam video and Ramirez's testimony showed that Baskin did not come to a complete stop but that he slowed to approximately nine miles per hour before proceeding through the intersection;

• Both Baskin and Taylor testified that they did not see each other, and Taylor surmised that this was due to the vehicle stopped in the middle lane;

• Ramirez noted that Baskin "may have operated the vehicle without due care" by failing to verify that all three lanes were clear before he entered the intersection; and

• Ramirez agreed that Baskin could have waited "another second or two" to make sure that traffic was clear and that, had he done so, the accident may not have occurred.

Viewing these particular facts in the light most favorable to Taylor and indulging every reasonable inference and resolving any doubts in his favor, we hold that the City failed to conclusively prove that Baskin slowed as necessary to safely enter the intersection against a red light. *See Miranda*, 133 S.W.3d at 228.

The City contends that, because Taylor did not argue in his plea-to-the-jurisdiction response that Baskin had failed to comply with laws applicable to emergency action but argued only that Baskin had acted with conscious indifference or reckless disregard, he has essentially forfeited the issue. However, the City was saddled with the initial burden of conclusively proving that Baskin had complied with applicable laws. *See Smith*, 562 S.W.3d at 83. Because the City did not do so, the burden never shifted to Taylor to prove otherwise. We overrule this argument.[4] *See id.*

## IV. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered: May 18, 2023

---

[4]The City also argues that whether Baskin stopped or merely slowed down before entering the intersection is irrelevant because established precedent states that a police officer need only slow down to prove a lack of indifference or recklessness. *See Maspero*, 640 S.W.3d at 523. But we do not reach this argument. Under the TTCA's emergency exception, we move to the question of whether Baskin acted recklessly or with conscious indifference only "in the absence of [an applicable emergency] law or ordinance." Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). As we have already explained, Section 546.001(2) of the transportation code applied here and, having failed to conclusively prove that Baskin's actions complied with that Section, we need not determine whether he also acted with indifference or recklessly. *See id.* at 529–30 (analyzing whether a police officer violated "laws and ordinances applicable to emergency action" independently of whether the officer also acted recklessly).

10