**Mary MORSE, et al., Appellant,**

v.

**The STATE of Texas, et al., Appellee.**

**No. 09–94–043 CV.**

Court of Appeals of Texas,
Beaumont.

Submitted April 6, 1995.

Decided Aug. 31, 1995.

Rehearing Overruled Sept. 29, 1995.

R.L. Pete McKinney, Crawford & McKinney, Clinard J. Hanby, Houston, for appellant.

Mark Heidenheimer, Asst. Atty. Gen., Austin, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

This suit for damages was brought pursuant to the Texas Tort Claims Act. Tex.Civ. Prac. & Rem.Code § 101 et. seq. (Vernon 1986). The seminal issue of this appeal is whether the dangerous condition constitutes an ordinary premise defect or a special defect. Trial was to a jury which rendered a verdict generally favoring appellant, Mary Morse, but finding that the Department of Public Highways and Public Transportation, one of the defendants below, did not have actual knowledge prior to the accident in question.

Factually, appellant's daughter, Laurice Morse, was killed in a one-car accident on October 10, 1989. The accident occurred in the Southbound access road at 26, 813 I–45 in Montgomery County, Texas. The posted speed limit was 50 miles per hour. According to the sole eyewitness, the decedent was traveling 40 to 45 miles per hour the moment before the accident and appeared to be driving normally. "In the blink of an eye" the left tires of the decedent's car went over a large drop-off between the traffic lane and the shoulder causing her to lose control of the vehicle, cross the access road, flip over, and crash into a tree.

The drop-off which caused the accident was as much as ten to twelve inches deep in places. According to testimony, Ms. Morse traveled 65 feet along the drop-off. Mr. Richard Spence, a supervisor who had been with the Highway Department for twenty years, admitted that even a six-inch drop-off adjacent to a roadway can cause accidents. A drop-off of that nature is considered a "critical condition" and should be repaired as soon as possible. Mr. Spence testified that he inspected the access road shortly after the accident; he further stated that the drop-off that caused the accident was one of the worst drop-offs he had ever seen. A second Highway Department employee with thirty (30) years of experience testified that, although he had seen several equivalent drop-offs, a drop-off of this nature needs to be repaired "immediately." An expert witness retained by the State and called by the plaintiff testified that a shoulder drop-off greater than three inches should probably be marked with a warning sign unless repaired immediately.

The accident in question was the fourth accident at this location in just over a one month period. Mr. Clyde Morley, who lived near the location of the accident, testified that there had been accidents there on September 8, September 15, and September 17. This fatal accident occurred October 10, 1989.

Mr. Jimmy Dykes was the driver of the vehicle involved in the September 8 accident. Mr. Dykes testified that, just before his accident, he was trying to pass a car that was pulling a wide trailer. Dykes stated: "... I went to go around him and I slipped off the shoulder, had a pretty good drop-off at the time and I went to try to pull it back on the road. That's when it started going sideways and I flipped my truck." An accident report was made by the officer who investigated the accident; the report reflected that Dykes "lost control when his left side tires dropped off the roadway ..."

Mr. Bill Wood was the driver of the vehicle involved in the September 15 accident. Wood described this accident as follows: "[M]y left rear tire came off that shoulder there which threw the truck out of control ... it threw me back up on the right hand side and I hit that car." Mr. Wood described the drop-off that caused him to lose control as of "considerable height." Wood testified that "once the back rear [tire] went off, the front come up off the ground ... I don't know how many inches it would take to do that." The drop-off threw Mr. Wood's vehicle "completely out of control." Wood testified that, after going over the drop-off, he could not have prevented an accident. The Wood accident was investigated by a Department of Public Safety officer. The accident report reflects: "The left back wheel of # 1 [Mr. Wood] dropped off the pavement. The driver steered to the right. The vehicle fishtailed to the left and back to the right...." This second accident occurring in front of Mr. Morley's home prompted him to call the Department of Public Safety to report two wrecks within just a week's time at that location. Under Department of Public Safety regulations, a road hazard was supposed to be reported to the Department of Public Transportation. No such report was made.

Mr. Morley personally observed the September 17 accident wherein a lady driving a Buick left the road, went spinning out of control in front of Morley's house and, once again, knocked down his mailbox.[1]

Appellant brings three points of error:

**POINT OF ERROR NO. 1**

The district court erred in ruling that the drop-off was not a "special defect" and in failing to render judgment for Plaintiff in accordance with the verdict because the drop-off that caused the accident was a "special defect" as a matter of law.

**POINT OF ERROR NO. 2**

The district court erred in failing to render judgment for the Plaintiff in accordance with the verdict because the evidence conclusively established that the State of Texas had actual knowledge of the drop-off.

**POINT OF ERROR NO. 3**

Alternatively, the district court erred in failing to submit a question to the jury regarding the actual knowledge of the State of Texas of the drop-off.

 The trial court ruled, as a matter of law, that the defect alongside the roadway, which caused the subject accident and resulting death of appellant's daughter, was a premise condition and not a "special defect." In addressing appellant's point of error one we must determine whether the trial court's ruling, under the law, was correct or incorrect. The existence of a special defect is a question of law for the trial courts. *See State v. Kitchen,* 867 S.W.2d 784, 786 (Tex. 1993). "Whether a condition is a premise defect or a special defect is a question of duty involving statutory interpretation and thus, an issue of law for the court to decide." *State Dept. of Highways and Public Transp. v. Payne,* 838 S.W.2d 235, 238 (Tex.1992);

---

1. There were two other accidents caused by the drop-off at this location on October 12, shortly before the State finally repaired the condition. Evidence concerning these accidents was excluded from the jury, but submitted to the district court for the purpose of determining the legal issue of whether the drop-off was a "special defect."

*see also Blankenship v. County of Galveston,* 775 S.W.2d 439, 441–42 (Tex.App.—Houston [1st Dist.] 1989, no writ). Legal conclusions of law are subject to de novo review in the court of appeals. *Gutierrez v. Karl Perry Enterprises, Inc.,* 874 S.W.2d 103, 105 (Tex. App.—El Paso 1994, no writ).

▪ Both ordinary premise defects and special defects can, and many times do, constitute a dangerous condition; however, the legal distinction between the two lies in the duty owed by the State to the person or property injured or damaged as a result of that defect. *See Payne,* 838 S.W.2d at 237. If the causative factor of appellant's claim is the result of a premise defect, the State owes appellant the same duty a private land owner owes a licensee. Tex.Civ.Prac. & Rem.Code § 101.022(a); *Payne,* 838 S.W.2d at 237; *State v. Tennison,* 509 S.W.2d 560, 562 (1974). Where a defect is determined to be a "premise defect," the duty upon the State (owner) is not to injure a licensee by willful, wanton or grossly negligent conduct; furthermore, the owner must use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not. *Payne, supra,* at 237. Citing Restatement (Second) of Torts § 342 (1965).

▪ However, if the drop-off running parallel and contiguous to the roadway where the subject accident occurred, is a special defect, the State owes appellant the same duty to warn that a private landowner owes an invitee. Tex.Civ.Prac. & Rem.Code § 101.022(b); *County of Harris v. Eaton,* 573 S.W.2d 177, 180 (Tex.1978); *Payne, supra,* at 237. If the drop-off is a "special defect," the State's duty to appellant is to use ordinary care to reduce or eliminate an unreasonable risk of harm created by the drop-off condition of which the State was or reasonably should have been aware. *Payne, supra,* at 237.

Our Texas Supreme Court in *Payne* sets forth the difference in the elements required to be proved by the plaintiff in order to prevail as follows:

> There are two differences between these theories. The first is that a licensee must

prove that the premises owner actually knew of the dangerous condition, while an invitee need only prove that the owner knew or reasonably should have known. The second difference is that a licensee must prove that he did not know of the dangerous condition, while an invitee need not do so.

*Payne, supra,* at 237.

▪ Special defects are statutorily defined as: "... defects such as excavations or obstructions on highways, roads, or streets...." Tex.Civ.Prac. & Rem.Code § 101.022(b). A condition can be a "special defect" without actually being on the roadway if it is close enough to present a threat to the "normal users of a road." *See Payne,* 838 S.W.2d at 238, n. 3. Where a "special defect" exists, it is the duty of that governmental unit which owns or controls a roadway to warn of same even though that governmental unit did not create the defect. *Eaton,* 573 S.W.2d at 179–180. Thus, the primary issue in the case at hand is whether the drop-off that caused this accident constitutes a condition "such as excavations or obstructions on highways," presenting an unexpected or unusual danger to ordinary users of the roadway.

Even though the trial court determined as a matter of law that the drop-off was "a premise condition" and not a "special defect," the trial court submitted jury questions prompting factual findings adverse to the trial court's ruling. The jury determined that the drop-off from the road shoulder constituted a dangerous condition of the roadway that presented an unreasonable risk of harm to Laurice Marleene Morse. The jury further determined that Laurice Marleene Morse did not have actual knowledge of the condition of the shoulder of the roadway where the accident occurred. Interestingly, the jury determined that the Texas Department of Transportation did not have actual knowledge of the condition of the shoulder of the roadway where the accident occurred, but did determine that through the exercise of ordinary care, the Texas Department of Transportation should have known of the dangerous condition prior to the October 10, 1989 accident.

In order for a condition to rise to the plateau of "special defect," such condition must be one which threatens normal users of a road even though such condition does not have to exist upon the surface of the roadway itself. *See, e.g., Chappell v. Dwyer,* 611 S.W.2d 158, 161 (Tex.Civ.App.—El Paso 1981, no writ); *Andrews v. City of Dallas,* 580 S.W.2d 908, 911 (Tex.Civ.App.—Eastland 1979, no writ); *City of Houston v. Jean,* 517 S.W.2d 596, 599 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). The special defect cannot be located so far from the roadway, however, that vehicular passengers and other normal users of the roadway are unlikely to encounter it. *See Payne,* 838 S.W.2d at 239. Moreover, whether on a road or near one, conditions can be "special defects such as excavations or obstructions on highways, roads, or streets ..." only if they pose a threat to the ordinary users of a particular roadway. *Payne,* 838 S.W.2d at 238–239, n. 3.

In considering whether a condition constitutes a "special defect," size of such condition should be considered. This requirement is clearly set forth in *Eaton,* 573 S.W.2d at 179; "one characteristic of the class [excavations or roadway obstructions] that should be considered is the size of the dangerous condition." Any attempt, however, to limit "special defects" to the examples cited in the statute—"excavations or roadway obstructions" ... places improper limitation on the intent of Section 101.022(b). "Under the ejusdem generis rule, we are to construe 'special defect' to include those defects of the same kind or class as the ones expressly mentioned." *Eaton,* 573 S.W.2d at 179, citing *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269 (1944); *Farmers & Mechanics' National Bank v. Hanks,* 104 Tex. 320, 137 S.W. 1120 (1911).

Appellee, by brief, places great emphasis on the size, i.e., depth of the drop-off causing Laurice Morse's vehicle to go out of control and ultimately resulting in her death. In an effort to minimize the problem posed by the drop-off, appellee declares that "... a six (6) inch of an unimproved shoulder is not comparable to a ditch across the highway." Appellees' reference to the "ditch across the high-way" actually comes from a phrase used by the Texas Supreme Court in *Eaton* to describe a six (6) inch deep pothole extending across ninety percent of the width of the highway. *Eaton,* 573 S.W.2d at 178. As far as depth is concerned, however, appellee's example of "special defect" from *Eaton* is no more dangerous than the drop-off faced by Laurice Morse. The drop-off in the instant case was 10–12 inches at its maximum depth and, according to Trooper Nelson, State's witness, 6–8 inches at the point where Ms. Morse left the roadway and traversed some 65 feet along the drop-off.

A substantial amount of evidence was presented at the trial herein concerning both the depth and the length of the drop-off. One thing made clear by the evidence is the fact that the drop-off in question tended to block the tires of a vehicle from reentering the traveled portion of the roadway. The evidence is somewhat overwhelming that the drop-off presented an unusual or unexpected danger. Even the testimony of Department of Transportation's employees establishes that the drop-off was unusual and extraordinary. Although appellee, throughout its brief, contends that the drop-off was only six (6) inches in depth, the record indicates that the drop-off in places was as much as ten (10) to twelve (12) inches deep. One Department of Transportation employee, who had been inspecting highways for twenty years, testified that this was one of the worst drop-offs he had ever seen. The State's expert witness admitted that even a three-inch drop-off should probably have been marked with a warning sign. One Department of Transportation employee testified that a six-inch drop-off was a "critical condition"; another testified that it would need to be repaired immediately. Based on the testimony of appellant's witnesses, as well as testimony of employees of the State, it is evident that the drop-off posed an unusual or unexpected danger to the normal users of the roadway.

Important to the distinction between ordinary premise defect and special defect is the requisite notice to the responsible State entity. Where the condition in question constitutes a premise defect, the licensee must prove that the owner [responsible entity] ac-

■■■■■■■■■■■

tually knew of the condition and further that the licensee did not actually know of said condition. *See Payne*, 838 S.W.2d 235 at 237. In contrast, the notice requirement where a condition creates a "special defect," casting a claimant in the legal posture of that of "invitee," requires that the invitee produce proof that the owner [responsible entity] knew or reasonably should have known of the condition. *Id.* at 237.

■■■ It is clear that a "special defect" need not originate through the act or acts of commission or omission by the responsible State entity. *Eaton*, 573 S.W.2d at 179. Whether created by the governmental unit, by natural forces, or by third persons, the dangerous condition on the roadway is the same. The significant difference between the situation in which the governmental unit itself created the condition and that in which something else created it is that the government will have actual knowledge of its existence if it created the condition. The governmental unit that has actual knowledge of its creation already has a duty even to a licensee. *Eaton*, 573 S.W.2d at 179, 180 (Tex.1978), citing *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (Tex. 1976).

As noted above, if the condition is a premises defect, the State must have actual knowledge of the condition. In a special defect situation, however, it is enough if the State knew or reasonably should have known of the condition.

■■■ The jury in this case found that the State Department of Public Highways and Public Transportation ("Department") should have known of the condition. Testimony in the record from two Department employees reveals that drive-by inspections of roads in their area were to be made weekly. The area engineer for the Department confirmed in his testimony that inspections were to be made once a week. Moreover, he further testified that if the condition, as described by two witnesses who had had accidents at the location within the previous month, had existed for over a month and had not been found and reported by inspection crews, that would constitute inadequate inspection. There was ample testimony in the record supporting the jury finding that the Department should have known of the dangerous condition created by the drop-off which resulted in the death of appellant's daughter. In addition, the unusual number of traffic accidents at the location in and of themselves should have been sufficient notice requiring the responsible entity to take appropriate measures to protect the traveling public. Responsible State agencies or entities should avoid the "ostrich approach" where public safety is jeopardized.

Moreover, the State did not raise a cross point on the jury's finding that the State should have known of the condition and thereby waived any objection as to that finding.

The trial court erred in its determination that the "drop-off" did not constitute a "special defect." Point of error one is sustained. In reversing the trial court's ruling, we determine, as a matter of law, that the "drop-off" was a "special defect" at the time of the accident. This Court's finding of special defect renders consideration of appellant's other points unnecessary. We further reverse the trial court's entry of a take-nothing judgment and render judgment against the State Department of Public Highways and Public Transportation (now Department of Transportation) upon the jury's verdict.

REVERSED AND RENDERED.