In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00058-CV
______________________________


VELMA DURHAM, INDIVIDUALLY AND AS ADMINISTRATRIX 
OF THE ESTATE OF ANNIE DURHAM, DECEASED, AND 
RICKY FOSTER, INDIVIDUALLY AND AS ADMINISTRATOR
 OF THE ESTATE OF TONYA FOSTER, DECEASED, Appellants
 
V.
 
BOWIE COUNTY, TEXAS, Appellee


                                              

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 01C-1286-202


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            On February 16, 2001, promptly after a flood-induced chasm in Bowie County Road 4121
was discovered, warning signs were placed at the site by County employees. The next day,
approximately one hour after the warning signs were removed—without the County's knowledge—
by some unknown third party, Annie Durham and Tonya Foster were killed when their car fell into
that chasm. Velma Durham and Ricky Foster subsequently sued Bowie County, alleging wrongful
death and seeking survivorship damages. Durham and Foster claim the Texas Tort Claims Act
waived sovereign immunity. See Tex. Civ. Prac. & Rem. Code Ann. § 101.001, et seq. (Vernon
1997 & Supp. 2004). The trial court found no waiver of sovereign immunity and granted Bowie
County's motion for summary judgment. Appealing the summary judgment, Durham and Foster
contend the trial court (1) failed to recognize the road washout as a special defect under Section
101.022, (2) erred in applying the Section 101.055 emergency exception, and (3) incorrectly applied
the notice requirement under Section 101.060. We affirm the summary judgment.
I.         Review of Summary Judgment Under Texas Tort Claims Act
            On appellate review of a summary judgment, the movant must show that there is no genuine
issue of material fact and that it is entitled to judgment as a matter of law. Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548 (Tex. 1985). In our determination of whether a material fact issue exists,
evidence favorable to the nonmovant will be taken as true, every reasonable inference indulged, and
any doubt resolved in favor of the nonmovant. Id. at 548–49. Summary judgment for a defendant
is appropriate where the defendant disproves at least one essential element of the plaintiff's cause of
action or conclusively establishes each element of an affirmative defense. Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997). If the movant establishes its right to summary
judgment, the burden then shifts to the nonmovant to present any evidence that would otherwise
preclude summary judgment. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678
(Tex. 1979).
            Because the common-law doctrine of sovereign immunity protects governmental units from
tort liability unless a constitutional or legislative provision expressly states otherwise, this appeal
turns on the applicability of the Texas Tort Claims Act. See Dallas County Mental Health & Mental
Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex. 1998). Waiving general immunity from tort
liability, Tex. Civ. Prac. & Rem. Code Ann. § 101.025(a), the Act provides that "[a] governmental
unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible
personal or real property if the governmental unit would, were it a private person, be liable to the
claimant according to Texas law," Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). This appeal
requires us to determine whether one of two proffered exceptions to the general waiver of immunity
applies as a matter of law, thus barring recovery and making the summary judgment proper.
II.        Sign Removal Exception
            Durham and Foster's first and third points of error challenge the application of Section
101.060(a)(3) in this case. That provision would maintain sovereign immunity against claims
"arising from the removal or destruction of a traffic or road sign, signal, or warning device by a third
person unless the governmental unit fails to correct the removal or destruction within a reasonable
time after actual notice." Tex. Civ. Prac. & Rem. Code Ann. § 101.060(a)(3). No immunity exists
under this section if the claim arises out of "the duty to warn of special defects such as excavations
or roadway obstructions." Tex. Civ. Prac. & Rem. Code Ann. § 101.060(c).
            Bowie County maintains that the exception applies under the facts of this case because
(1) both parties agree the road closure signs placed on County Road 4121 were removed by an
unknown third party approximately one hour before the accident occurred, and (2) Durham and
Foster failed to produce any evidence the County was actually aware the signs had been removed. 
The County's reliance on Section 101.060 is misplaced because the washout of County Road 4121
was certainly a special defect as that term is used in Sections 101.060(c) and 101.022(b).
            "Whether a condition is a premise defect or a special defect is a question of duty involving
statutory interpretation and thus an issue of law for the court to decide." State Dep't of Highways
& Pub. Transp. v. Payne, 838 S.W.2d 235, 238 (Tex. 1992). Statutorily defined as including
"excavations or obstructions on highways, roads, or streets," Tex. Civ. Prac. & Rem. Code Ann.
§ 101.022(b), special defects have been viewed generally by courts as conditions that present a threat
to normal users of a road, Morse v. State, 905 S.W.2d 470, 474 (Tex. App.—Beaumont 1995, writ
denied). This is true even if the defect is not actually on the road itself or if the defect was created
by natural forces, as opposed to an overt action by the governmental unit. Id. at 475–76 (citing
Harris County v. Eaton, 573 S.W.2d 177, 179 (Tex. 1978)).
            For a condition to be a special defect, however, it must not only present a threat to the
ordinary user of a roadway, but the danger must also be unexpected and unusual. State Dep't of
Highways & Pub. Transp. v. Kitchen, 867 S.W.2d 784, 786 (Tex. 1993). A special defect, as
distinguished from a premise defect, is outside the ordinary course of events or longstanding and
routine expectation. Harding v. Kaufman County, 119 S.W.3d 428, 433 (Tex. App.—Tyler 2003,
no pet.). For example, when rain is accompanied by freezing temperatures, it is neither unexpected
nor unusual for icy conditions to develop on a bridge. Id. (citing Kitchen, 867 S.W.2d at 786). 
Likewise, it is neither unexpected nor unusual that flooding might occur at a low-water crossing
during a thunderstorm. Id. (citing Corbin v. City of Keller, 1 S.W.3d 743, 747 (Tex. App.—Fort
Worth 1999, pet. denied)).
            The summary judgment evidence in this case conclusively establishes that the February 17,
2001, washout of County Road 4121 was a special defect within the meaning of the Act. See State
v. Nichols, 609 S.W.2d 571, 573 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (ruling three-to four-foot caved-in portion of highway was special defect). Bowie County employees described the
dangerous condition in question as a hole extending almost entirely across the width of the roadway,
approximately five to seven feet deep and impossible for a vehicle to travel safely over or around. 
See Morse, 905 S.W.2d at 475 (to determine whether condition is special defect, consider size of
condition). Unlike the expectation of potholes and ruts on an unpaved rural road, the gaping,
impassable hole left after the collapse of the culvert underlying County Road 4121 was outside the
ordinary course of events or longstanding and routine expectation. We hold, therefore, that the
washout of County Road 4121 was a special defect under Section 101.022(b), making the sign
removal exception of Section 101.060(a)(3) inapplicable.
III.       Emergency Exception
            In response to Durham and Foster's second point of error, Bowie County maintains that
sovereign immunity was preserved in light of the Act's emergency exception. That exception
provides that immunity is not waived for claims arisingfrom the action of an employee while responding to an emergency call or reacting to
an emergency situation if the action is in compliance with the laws and ordinances
applicable to emergency action, or in the absence of such a law or ordinance, if the
action is not taken with conscious indifference or reckless disregard for the safety of
others.

Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). If the exception applies, its language completely
removes from the statutory waiver of sovereign immunity any claims arising from Bowie County's
emergency actions or reactions, and, unlike our earlier discussion of the exception laid out in Section
101.060(a)(3), this is true regardless of the offending defect's classification. City of Arlington v.
Whitaker, 977 S.W.2d 742, 745 (Tex. App.—Fort Worth 1998, pet. denied).
            To establish this affirmative defense for purposes of summary judgment, Bowie County must
prove, as a matter of law, all of the essential elements of the defense, leaving no issues of material
fact. See Sci. Spectrum, Inc., 941 S.W.2d at 911. That is, Bowie County must prove it was reacting
to an emergency situation and either acted in compliance with any laws applicable to its emergency
action or, in the absence of such laws, did not act with conscious indifference to, or reckless
disregard for, the safety of others.


 "The question on appeal is not whether the summary judgment
proof raises a fact issue, but whether the summary judgment proof establishes as a matter of law that
there is no fact issue." Borrego v. City of El Paso, 964 S.W.2d 954, 958 (Tex. App.—El Paso 1998,
pet. denied) (citing Gibbs v. Gen. Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970); Mejia v. City of
San Antonio, 759 S.W.2d 198, 200 (Tex. App.—San Antonio 1988, no writ)). Our review of the
record indicates Bowie County met this burden and was, therefore, entitled to summary judgment. 
We examine those elements of proof in order, considering (1) whether Bowie County was reacting
to an emergency situation and (2) whether it acted in compliance with laws applicable to emergency
action.
            A. Emergency Response
            The proof conclusively establishes that Bowie County's placing of the signs at the scene of
the washout was a reaction to an emergency situation. Both parties provided summary judgment
evidence of the severity of the storms and flooding leading to the washout of a portion of County
Road 4121. They also agreed that county employees responded to this potentially deadly hazard on
February 16 by placing road closure signs leading up to the washed-out area of the road and that
those signs remained in place until approximately one hour before the accident on February 17, when
they were removed by an unknown third party.



            If raised by the evidence at trial, it would normally be for the jury to decide whether the
elements of Section 101.055(2)—such as the existence of an emergency and the government's
compliance with applicable laws and ordinances—were satisfied. Borrego, 964 S.W.2d at 958
(citing Mejia, 759 S.W.2d at 200). In this case, however, the first requirement of the statute is
satisfied in that the evidence conclusively demonstrates Bowie County was reacting to an emergency
situation at the time its employees placed the road closure signs February 16.
            Noting that the emergency exception does not apply solely to traffic accidents involving
emergency vehicles, Whitaker, 977 S.W.2d at 745, we conclude that, under the summary judgment
evidence, the effects of the weather conditions faced by Bowie County were so serious and
widespread that, under the circumstances, Bowie County conclusively proved it was reacting to an
emergency situation when its employees placed the road closure signs.



            B.        Compliance with Laws Applicable to Emergency Action
            Durham and Foster, contending the provisions of the Texas Manual on Uniform Traffic
Control Devices for Streets and Highways, 1980 edition, as amended by Revision Number 7
("Manual"), required Bowie County to place road closure signs according to specified criteria, argue
that the County failed to comply with the Manual and, therefore, could not have satisfied the second
element of the emergency exception. See 24 Tex. Reg. 169 (1999) (codified at 43 Tex. Admin.
Code § 25.1) (in effect at time of accident).


 Focusing on the portions of the Manual which Durham
and Foster assert are, within the meaning of Section 101.055(2), "laws" or "ordinances" "applicable
to emergency action" with which Bowie County did not comply, we hold they are "laws" or
"ordinances" but are not "applicable to emergency action."
                        1.         "Laws" or "Ordinances"
            Citing Guillen v. City of San Antonio, 13 S.W.3d 428, 433 (Tex. App.—San Antonio 2000,
pet. denied), Bowie County asserts the Manual does not apply because provisions of the Texas
Administrative Code are not included in the "laws and ordinances" referred to in the emergency
exception. Bowie County also cites City of El Paso v. Hernandez, 16 S.W.3d 409, 416 (Tex.
App.—El Paso 2000, pet. denied) (citing Fernandez v. City of El Paso, 876 S.W.2d 370, 376 (Tex.
App.—El Paso 1993, writ denied)), as authority for its argument that Durham and Foster failed to
carry their burden of alleging and proving the action forming the basis of their complaint violates
a statute or ordinance.
            We do not believe Guillen and Hernandez support these positions. Guillen, for example,
mentions Section 101.055(2) but does not address it. While Guillen stands for the proposition that
Section 101.062's reference to a "statute or ordinance" does not include a rule under the Texas
Administrative Code, it distinguishes City of San Antonio v. Higle, 685 S.W.2d 682 (Tex.
App.—San Antonio 1984, writ ref'd n.r.e.), on the basis that Higle dealt with the predecessor to
Section 101.055(2), Tex. Rev. Civ. Stat. Ann. art. 6252-19, § 14(8), which, like Section
101.055(2), uses the words "laws and ordinances." Guillen, 13 S.W.3d at 433 (emphases added). 
Higle (1) found that departmental procedures of the San Antonio Police Department were "laws" or
"ordinances," (2) put the burden of proof of compliance on the defending governmental entity, and
(3) affirmed a judgment against the city. Higle, 685 S.W.2d at 687. Guillen not only recognized the
significance of the different statutory language—"statute or ordinance" is more restrictive than "laws
and ordinances"—but also recognized the two sections' language warranted opposite burdens of
proof. Guillen, 13 S.W.3d at 433. We agree. Once a sign is installed, the Manual qualifies as
having the force of law within the meaning of Section 101.055(2).
                        2.         "Applicable to Emergency Action"
            The final, and critical, inquiry is whether the relevant Manual excerpts apply to "emergency
action" within the meaning of Section 101.055(2). In part because the Manual in effect at the time
of the accident is not readily available to this Court, we requested and received supplemental briefing
from the parties regarding the Manual. In requesting supplemental briefing, we asked Durham and
Foster to provide us with copied or imaged portions of the Manual (1) which they assert were, within
the meaning of Section 101.055(2), "applicable to emergency action," and (2) with which, they
assert, the County failed to comply.
            In response, Durham and Foster provided us with six photocopied pages from the Manual,
pages 6B-1, 6F-8, 6F-41, 6H-13, 6H-52, and 6H-53, all from the Manual's "Part 6," titled
"Temporary Traffic Control." Page 6B-1, the first page of Chapter 6B, titled "Fundamental
Principles," importantly provides, "All traffic control devices used on street and highway
construction, maintenance, utility, or incident management (temporary traffic control) operations
shall conform to the applicable specifications of this manual." (Emphasis added.) What is meant
by "incident management" is not defined in the excerpts provided. Understandably, the parties differ
over whether "incident management" as used in the Manual includes "emergency action" as used in
Section 101.055(2).
            From Chapter 6F, "Temporary Traffic Control Zone Devices," Durham and Foster provided
us pages 6F-8 and 6F-41. Neither page provides more light on whether the pages excerpted from
the Manual are applicable to emergency action. The same is true of the other three pages provided,
from Chapter 6H, "Application of Devices," pages 6H-13, 6H-52, and 6H-53.
            The County asserts that, since "incident management" is used on page 6B-1 in the same list
as "construction," "maintenance," and "utility," the word "incident" should also be understood to
include an element of planning, thus excluding emergency situations from the meaning of "incident"
as used by the Manual. While that logic may not be compelling standing alone, we note that the six
pages provided us do not expressly, or by necessary implication, apply the provisions to emergency
action. While "incident" does not necessarily exclude emergencies, the authors of the Manual could
have chosen to use the word "emergency" and make it clear they intended to include it. They did not
do so, at least in the Manual excerpts provided to this Court.
            If the pages we have been given apply to the emergency response by the County, they would
require the County to erect, in an emergency situation, a minimum of twelve freestanding signs
(including  "Road  Closed  Ahead,"  "Detour  Ahead,"  and  "Detour"),  as  well  as  from  two  to  six
Type III barricades with signs affixed (including "Road Closed" and "Detour," and possibly "Road
Closed to Thru Traffic"). See page 6H-53. This amount of required, systematic detail seems to
contemplate a situation amenable to the formulation of a plan, rather than an immediate response to
an emergency situation such as the one which faced the County in this case.
            The context of Section 101.055(2) is also important to remember. It provides that immunity
is not waived for claims arising "from the action of an employee while . . . reacting to an emergency
situation if the action is in compliance with the laws and ordinances applicable to emergency
action." Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2) (emphases added). We believe that
language was used to allow the Legislature room to regulate specific emergency responses by
governmental entities, such as driving an emergency vehicle in traffic or responding to an emergency
law enforcement situation. In other words, if a law or ordinance specifies how any particular
emergency response is to be made, the law or ordinance must be complied with. We do not believe
Section 101.055(2) was intended to refer to a general law, such as the Manual, that might touch on
emergency situations.
            For that reason, we hold that the portions of the Manual urged by Durham and Foster are not
"applicable to emergency action" within the meaning of Section 101.055(2).
IV. Conclusion
            Having determined the unsafe condition of County Road 4121 constituted a special defect
within the meaning of Section 101.022(b) of the Texas Tort Claims Act, we therefore hold that, by
application of Section 101.060(c), sovereign immunity was not preserved under the sign removal
exception set out in Section 101.060(a)(3). We hold that, as a matter of law, Durham and Foster's
claims arose from the action of Bowie County employees reacting to an emergency situation and
that, while the Manual is a "law" or "ordinance," the asserted portions of the Manual were not
"applicable to emergency action" within the meaning of Section 101.055(2).
            Summary judgment in favor of Bowie County was, therefore, proper. Accordingly, we affirm
the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          January 8, 2004
Date Decided:             April 21, 2004