IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 08-0016
════════════
 
 
Denton 
County, Texas, Petitioner,
 
v.
 
Dianne Beynon and Roger 
Beynon, Individually, et al., Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Second 
District of Texas
════════════════════════════════════════════════════
 
 
            
Justice O’Neill, joined by Chief Justice Jefferson and Justice Medina, dissenting.
 
 
            
It is hard to imagine anything more dangerous than a seventeen-foot metal 
pole pointing like a spear in the direction of oncoming traffic. The Court 
doesn’t appear to disagree. It concludes, however, that ordinary users of the 
roadway are not expected to veer off the asphalt pavement, so anything they 
might encounter if they do cannot be a special defect. I would agree with the 
Court if the particular hazard were farther from the road than the metal pole 
that impaled the plaintiff’s vehicle here. But departing a mere three feet from 
the road to avoid a collision is not out of the ordinary, and the floodgate 
arm’s close proximity to the road’s edge posed a threat that normal users of the 
road would not expect. Because the Court concludes otherwise, I respectfully 
dissent.
            
Rhiannon Beynon was a passenger in the backseat of a vehicle driven by 
Mark Hilz. While driving on Old Alton Road in 
Denton 
County, Hilz observed an oncoming vehicle with its brights on driving down the center 
of the road. To avoid the oncoming car, Hilz steered 
his vehicle toward the edge of the road. As Hilz moved 
his car over, the right tires left the pavement and dropped about eight inches 
onto the unpaved, unimproved shoulder. Hilz quickly 
turned his wheels to the left and returned to the road briefly. But in his 
attempt to correct the path of the car, he lost control. Hilz turned the car left and then tried to correct by 
turning to the right. When he turned back to the right, the front wheels left 
the road and the car’s undercarriage caught the edge of the pavement. The 
vehicle began to slide along the road at a forty-five degree angle with its rear 
wheels still on the pavement. While the car slid along the pavement, a floodgate 
arm punctured the driver’s door. In its proper position the floodgate arm, a 
seventeen-foot metal pole attached to a base buried in the ground, would have 
been facing away from traffic and secured in place. However, the arm was 
unsecured and improperly pointing toward oncoming traffic when Hilz’s car collided with it three feet from the pavement. 
The arm penetrated the driver’s door, pierced Rhiannon’s leg, and exited through 
the floorboard. The car stopped its slide at the base of the floodgate. Hilz did not see the floodgate arm or realize that the car 
had collided with it until he heard Rhiannon’s screams. Rhiannon’s injuries 
resulted in amputation of her leg below the knee.
            
The Court does not dispute that the floodgate arm was in the wrong 
position, that the floodgate arm impaled the vehicle[1], or that its open position was unexpected 
and dangerous. The Court concludes, however, that because Hilz veered three feet from the asphalt, he was no longer an 
ordinary user of the road and Denton County’s plea to the jurisdiction should 
have been granted. I disagree.
            
Special defects are “defects of the same kind or class as ‘excavations or 
obstructions on highways, roads, or streets’ that present an ‘unexpected and 
unusual danger to ordinary users of roadways.’” City of 
Dallas v. Reed, 258 S.W.3d 620, 622 (Tex. 2008) (citation omitted). To be a 
special defect, the condition must also “unexpectedly and physically impair a 
car’s ability to travel on the road.” State v. 
Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999). A special defect need not 
occur on the surface of a road, but “[w]hether on a 
road or near one, . . . conditions can be [special 
defects] only if they pose a threat to the ordinary users of a particular 
roadway.” State Dep’t of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 238 
n.3 (Tex. 
1992).
            
The Court concludes the floodgate arm is not a special defect because it 
was not blocking the road and the objective expectations of an “ordinary user” 
would not include veering off the road and onto the grass. But “ordinary users” 
of roads sometimes stray outside the lines, else there 
would be no need for shoulders. In my view, vehicle operators do not cease to be 
ordinary users every time they veer onto a shoulder. As the court of appeals 
observed, normal users of the road nearly always drive on the paved surface, yet 
“it is certainly not inconceivable that a normal user of the road might pull off 
or leave the edge of the road onto the unimproved shoulder for one reason or 
another, either intentionally or accidentally.” 242 S.W.3d at 
174. In the ordinary course of driving, hazards like road debris, 
livestock, or other drivers who don’t respect their lanes are often encountered 
that require prudent drivers to take advantage of the shoulder, whether improved 
or unimproved. The Court’s conclusion that a driver was no longer an ordinary 
user because two of his tires left the roadway as the result of his efforts to 
escape a head-on collision is inconsistent with what objectively reasonable 
drivers do every day.
            
The Court recognizes that the test for determining the expectations of an 
ordinary user is an objective one. Yet it fails to conduct an objective 
analysis, citing only Hilz’s statement that “the 
‘normal course of travel for [
Old 
Alton Road
] would be the asphalt pavement.’” Hilz’s testimony merely states the obvious: users of the 
road normally drive on the paved surface. That doesn’t mean veering three feet 
from the asphalt to avoid a collision, with two wheels still on the road, places 
a driver beyond the normal course of travel. The Court’s concept of “ordinary 
user” limits special defects to those that appear only within the lines between 
the shoulders of the road, contrary to our acknowledgment in Payne that a 
number of courts have recognized that “conditions threatening normal users of a 
road may be special defects even though they do not occur on the surface of a 
road.” 838 S.W.2d at 238 n.3 (citations omitted); see, e.g., Harris 
County v. Ciccia ex rel. 
Ciccia, 125 S.W.3d 749, 754–55 (Tex. App.—Houston 
[1st Dist.] 2003, pet. denied) (holding that a culvert yards beyond the road’s 
end where a “right-turn only” lane directed traffic is a special defect); see 
also Tex. Dep’t of Transp. v. Dorman, No. 
05-97-00531-CV, 1999 WL 374167 at *2–4 (Tex. App.—Dallas June 10, 1999, pet. 
denied); Morse v. State, 905 S.W.2d 470, 474–76 (Tex. App.—Beaumont 1995, 
writ denied).
            
Not all off-road objects a driver might encounter in the ordinary course 
of travel qualify as special defects; to the contrary, few do. Obstructions like 
road signs, construction equipment in marked construction zones, and properly 
secured floodgate arms are not unexpected and do not pose an unusual danger to 
ordinary travelers. See 
City of Dallas v. Giraldo, 262 S.W.3d 
864, 871 (Tex. 
App.—Dallas 2008, no pet.) (holding that a bulldozer parked eight to ten 
feet off the edge of the road is “not of the same kind or class as the 
excavations or obstructions the statute contemplates” and “did not pose a threat 
to the ordinary users of the roadway”); Harris County v. Smoker, 934 
S.W.2d 714, 719 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (“[A] 
longstanding, routine, or permanent condition is not a special defect.”). But an 
unsecured floodgate arm pointing directly at oncoming traffic a mere three feet 
from the road’s edge is out of the ordinary, unexpected, and extremely dangerous 
to ordinary users of the roadway.
            
Under the particular circumstances presented in this case, I consider the 
floodgate arm a special defect and would affirm the court of appeals’ judgment. 
Because the Court does not, I respectfully dissent.
 
                                                                        
___________________________________
                                                                        
Harriet O’Neill
                                                                        
Justice
 
OPINION DELIVERED: May 1, 
2009







[1] 
The Court summarily concludes that the floodgate arm “is not of the same 
kind or class as an excavation or obstruction . . . .” It is hard to envision a 
more significant obstruction than a seventeen-foot metal pole piercing a 
vehicle’s door and floorboard. Moreover, as we have noted, “The examples in the 
statute are not exclusive, and courts are to construe ‘special defects’ to 
include defects of the same kind or class as the ones expressly mentioned in the 
statute.” City of Grapevine 
v. Roberts, 946 S.W.2d 841, 843 (Tex. 1997). In my view, a metal pole 
that pierced a vehicle, preventing it from traveling farther down the road, is 
similar enough to an obstruction to fall within the statute’s ambit.