

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00175-CV

RICHARD BRUMFIELD                                                    APPELLANT

V.

TEXAS DEPARTMENT OF                                                   APPELLEE
TRANSPORTATION

----------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Richard Brumfield appeals the trial court's order granting the motion for summary judgment and plea to the jurisdiction of Appellee Texas Department of Transportation (TxDOT). We will affirm.

In late June and early July 2010, TxDOT performed a "mill and overlay" to repair cracks in the northbound service road near the entrance ramp to SH 360.

---
[1]See Tex. R. App. P. 47.4.

TxDOT milled out—or removed—the surface layer of the road on June 22 and 23 and completed the overlay—or packing of asphaltic material into the milled area—on July 6 and 7. According to John Nolt, TxDOT's crew leader, the depth of the mill out was set not to exceed two inches, the difference in elevation caused by the milling was beveled using universal patching material, and TxDOT posted signs warning of uneven and grooved pavement during the interval between when the mill out was performed and when the overlay was performed. Had the depth of the mill out been three inches or more, TxDOT would have instead performed a "mill and inlay"—a procedure in which TxDOT mills and lays on the same day.

On June 27, 2010, at around 4:00 a.m.—after TxDOT had milled out the service road but before it had performed the overlay—Brumfield turned the motorcycle that he was riding onto the northbound service road of SH 360 and headed towards the entrance ramp to the highway. When Brumfield began to transition from the lower depth of the milled-out service road to the entrance of SH 360 (which had not been milled out), he lost control of his motorcycle and crashed. Brumfield later sued TxDOT to recover damages for his alleged injuries, averring that the milled-out service road was a special defect or a premises defect.

TxDOT filed a no-evidence motion for summary judgment and a plea to the jurisdiction. It attached evidence to the motion and argued that its sovereign immunity had not been waived. After Brumfield responded, TxDOT filed a reply

2

that contained additional evidence that had not been included with its original motion and plea, and it referred to its motion as a traditional and no-evidence motion for summary judgment and plea to the jurisdiction.

In addition to Nolt's affidavit testimony that the service road had been milled out at a depth of no more than two inches, TxDOT's jurisdictional evidence included deposition testimony from Scott Jones, an assistant maintenance section supervisor with TxDOT. Jones testified that while a mill machine can mill up to twelve inches deep, the standard setting for a mill and overlay is two inches. And, like Nolt, Jones opined that a mill and inlay would have been the preferred procedure (as opposed to a mill and overlay) had the mill out exceeded two inches in depth.

Brumfield testified in his deposition that he initially did not know what had caused him to lose control of his motorcycle; he "was just going and . . . just fell to the left." Brumfield returned to the service road a day or so later and observed that there was a difference in elevation between the service road and the entrance to SH 360. When asked about the difference in elevation—whether it was an inch and a half, two inches, two-and-a-half inches, three inches— Brumfield said that he did not know.

Brumfield's response also included deposition testimony from Andrew Ganger. On June 23, 2010, four days before Brumfield's accident, Ganger crashed his motorcycle when he attempted to merge from the service road of SH 360 onto the entrance ramp to the highway. Like Brumfield, Ganger did not

3

notice before his accident that the road had been "cut out." Ganger recalled that the difference in elevation between the service road and the entrance ramp was about a half inch and that it was cut at about a forty-five degree angle.

The trial court granted TxDOT's plea but later granted Brumfield's motion for new trial because "evidence and argument was filed after" the hearing on TxDOT's motion and plea, "and a new trial [would] allow proper consideration of all evidence and argument before the Court." The trial court reset and later granted TxDOT's motion for summary judgment and plea to the jurisdiction.

In his first issue, Brumfield argues that the trial court erred by granting TxDOT's plea to the jurisdiction because the condition of the service road at the time of his accident constituted a special defect. Alternatively, Brumfield contends that his jurisdictional evidence raised a genuine issue of material fact regarding the elements of his ordinary premises liability claim that TxDOT challenged in the trial court. TxDOT responds that a two-inch variation in road surface elevation is not a special defect and that Brumfield failed to establish a cause of action based on a premises-liability theory.

Governmental immunity from suit defeats a court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex. 1999). If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction and the fact issue will be resolved by the factfinder. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004).

4

The Texas Tort Claims Act (TTCA) provides a limited waiver of immunity to suit for tort claims arising from special defects. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(2), 101.022(b) (West 2011). The TTCA likens special defects to "excavations or obstructions on highways, roads, or streets." *Id.* § 101.022(b). The supreme court has described the narrow class of conditions contemplated by section 101.022(b) as those that, because of their size or some unusual quality outside the ordinary course of events, pose an unexpected and unusual danger to ordinary users of roadways. *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 655 (Tex. 2012); *Reyes v. City of Laredo*, 335 S.W.3d 605, 607 (Tex. 2010). The determination of whether a condition is a special defect is a question of law for the court to decide. *State v. Burris*, 877 S.W.2d 298, 299 (Tex. 1994).

The jurisdictional evidence regarding the depth of the mill out on the service road is as follows: (i) Nolt testified that the mill out was no deeper than two inches; (ii) Jones testified that the standard setting for a mill and overlay—the procedure that TxDOT performed—is two inches; (iii) both Nolt and Jones testified that TxDOT would have performed a different procedure, a mill and inlay, had the depth of the mill out been three inches or more; (iv) Ganger testified that the difference in elevation between the milled service road and the entrance ramp was about a half inch; and (v) Brumfield did not know what the difference in elevation was between the milled service road and the entrance ramp. Taken together, the jurisdictional evidence regarding the depth of the mill out ranged from a half inch to two inches. Brumfield appears to argue that the

5

mill out could have been deeper, citing Jones's testimony that the mill machine is capable of milling up to twelve inches deep, but there is no evidence that TxDOT removed anything more than the top two inches of the service road.

In *City of Dallas v. Reed*, the plaintiff sued the City to recover personal injury damages from a motorcycle accident caused by a two-inch elevation variance on the roadway as he changed lanes. 258 S.W.3d 620, 621 (Tex. 2008). The supreme court held that the two-inch difference in elevation between the traffic lanes was not a special defect because (1) it was not in the same class as an excavation or obstruction and (2) "there is nothing unusually dangerous about a slight drop-off between traffic lanes in the roadway." *Id.* at 622.

This case is on all fours with *Reed*. Brumfield crashed his motorcycle when he encountered, at most, a two-inch variation in elevation between the service road and the entrance to SH 360. Not only is the two-inch variation in elevation between the service road and the highway entrance not in the same class as an excavation or obstruction on a roadway, *cf., Harris Cnty. v. Eaton*, 573 S.W.2d 177, 178–80 (Tex. 1978) (holding that a large hole ten inches deep and nine feet wide covering ninety percent of the road's width was a special defect), but ordinary drivers like Brumfield should expect to encounter slight variations on the road like the one at issue in this case. Brumfield attempts to distinguish *Reed* by pointing out that the condition in that case was caused by normal deterioration instead of construction maintenance, but a two-inch variation in elevation is a two-inch variation in elevation, however it was caused.

6

Brumfield argues that TxDOT conceded that the condition is a special defect because it referred to the mill out during discovery as an "excavation," but a special defect exists when the legal requirements of the condition are met, not when the term is uttered in the colloquial sense. Moreover, *Morse v. State*, which Brumfield likens this case to, is inapposite because the drop-off between the traffic lane and the shoulder of the highway that caused the plaintiff to lose control of her vehicle was ten to twelve inches deep at its maximum depth and six to eight inches deep where the plaintiff left the roadway—depths much greater than the two-inch variation in elevation here—and because the evidence was "somewhat overwhelming" that the drop-off presented an unusual or unexpected danger, unlike the evidence of the elevation change in this case. 905 S.W.2d 470, 475 (Tex. App.—Beaumont 1995, writ denied).

We hold that the two-inch variation in surface elevation that Brumfield encountered when he transitioned from the service road to the entrance ramp of SH 360 is not a special defect. We overrule this part of Brumfield's first issue.

If the two-inch variation is a premises defect, as Brumfield alternatively argues, then TxDOT owed Brumfield the same duty that a private landowner owes a licensee. Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). That duty requires that a landowner not injure a licensee by willful, wanton, or grossly negligent conduct and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is

7

aware and the licensee is not. *Payne*, 838 S.W.2d at 237. In determining whether a premises owner has actual knowledge, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition. *Reed*, 258 S.W.3d at 622.

There is no evidence that TxDOT received a report about Ganger's accident or any other incident or warning involving the milled-out service road before Brumfield's accident. Nolt stated in his affidavit dated January 15, 2013, "I have been informed that, four days before the Brumfield incident, another driver, Ganger, on June 23, 2010, at 8:58 am, had also had an incident." But this temporally ambiguous statement is no evidence that TxDOT knew of Ganger's accident before Brumfield's accident.

Brumfield argues that circumstantial evidence raised a fact issue about TxDOT's knowledge of the condition because TxDOT created the condition and left it unattended until July 6, 2010. *See Price Constr., Inc. v. Castillo*, 147 S.W.3d 431, 438 (Tex. App.—San Antonio 2004, pet. denied) (Stone, J., dissenting). While it is undisputed that TxDOT created the condition, there is no evidence that the one-half to two-inch variation in elevation between the service road and the highway entrance was unreasonably dangerous. A condition is unreasonably dangerous if it presents an unreasonable risk of harm. *See Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007). A condition presents an unreasonable risk of harm when there is such a probability of a harmful event occurring that a reasonably prudent person would have foreseen it

8

or similar events as likely to happen.  *Seideneck v. Cal Bayreuther & Assoc.*, 451 S.W.2d 752, 754 (Tex. 1970).

Here, the elevation variation was so slight that neither Brumfield nor Ganger noticed it when they drove through the area, and there is no evidence that the newly exposed surface of the milled-out service road caused drivers any problems.  Nolt testified that TxDOT beveled the edge, and Ganger confirmed that the variation was angled at about forty-five degrees.  Thus, instead of forming a ninety-degree angle with the entrance ramp, the variation was angled or sloped to achieve a smoother transition between the surfaces for passing motorists.  Moreover, Brumfield's argument that the condition presented an unreasonable risk of harm is irreconcilable with our reasoning above that an ordinary driver like Brumfield should expect to encounter slight variations on the road like the one here; ordinary drivers should not expect to encounter unreasonably dangerous conditions on the road.  Although there may be circumstances in which a two-inch mill out constitutes an unreasonably dangerous condition, those circumstances are not present in the jurisdictional evidence here.

There is no evidence that TxDOT had actual knowledge of an unreasonably dangerous condition.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a).  Accordingly, we hold that the trial court did not err by granting TxDOT's motion for summary judgment and plea to the jurisdiction on Brumfield's premises defect claim.  We overrule the remainder of Brumfield's first issue.

In his second issue, Brumfield argues that TxDOT improperly attempted to shift the burden to him to disprove the applicability of TxDOT's governmental immunity defense. TxDOT's motion for summary judgment had all the characteristics of a traditional motion for summary judgment. *See Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) ("[W]e look to the substance of a motion to determine the relief sought, not merely to its title."). Moreover, the trial court granted Brumfield's motion for new trial so that it could properly consider all of the evidence and arguments presented by the parties, including TxDOT's evidence. If Brumfield's assumption was correct—that TxDOT attempted to shift the burden to him to disprove its immunity claim—then the trial court would not have had to consider TxDOT's evidence, but it expressly did so. We overrule Brumfield's second issue.

Having overruled Brumfield's two issues, we affirm the trial court's order granting TxDOT's motion for summary judgment and plea to the jurisdiction.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED: May 29, 2014